## THE WATER WITCH—*Clifton, Claimant; Sheldon, Libellant.*

1. Two consignees of a cargo libelled the ship by which it was carried for damage suffered on the voyage, and the owner of the ship libelled the whole cargo for freight and primage. The District Court heard the three causes as one, and finding the damages to be greater than the freight, dismissed the libel of the owners and decreed in favor of the consignees for so much as the damage to the cargo exceeded the amount of the freight. The consignees submitted, but the claimant of the ship appealed in all the cases to the Circuit Court: *Held,* that the Circuit Court was right in modifying the decrees of the District Court, so as to give to the owner of the ship the amount of his freight and the consignees the whole sum due them as damages.

2. The claimant of the vessel has no right to complain here of such change in the decree, because it benefited him by giving him the costs of his suit.

3. The parties cannot split up the claim for damages by applying a part to extinguish the claim for freight, and taking a decree for the remainder.

4. A ship which has received a cargo, carried it to the consignees at the port of destination, and then libelled the cargo for freight, is estopped to deny her liability to deliver in like good order as received, with the usual exceptions.

5 A party who has made advances on the cargo of a ship, and been treated as consignee by the owners, has such a title as enables him to libel the ship for damages to the cargo.

6 Where the contract between the shipper and the master refers to the "capacity of the vessel," a doubtful inference may be drawn that the cargo was to be carried on deck; but this inference is repelled by the fact that the shipper refused to let such an agreement have a place in the bill of lading, and bound himself to pay under-deck freight.

7. Where a cause in admiralty turns on a question of fact, and the evidence is conflicting, and both the courts below decide the same way, it is not for this court to hear arguments whether eleven deponents ought to be believed on one side rather than ten on the other, for the weight of testimony is not always with numbers.

Appeal from the Circuit Court of the United States for the southern district of New York.

Sheldon filed his libel in the District Court of the United States for the southern district of New York against the brig Water Witch. The libellant claimed to be the consignee of two hundred and two bales of cotton, which had been shipped on board of that vessel at Lavacca, Texas, for transportation to New York, there to be delivered to him on payment of freight. The libel alleged that through the negligence of those in charge of the vessel, bad stowage and other careless management, the cotton was greatly injured. The answer put in issue the various allegations of the libel, and alleged affirmatively that the "contract mentioned in the libel did not, nor could in anywise, bind the said vessel, nor was the same authorized or assented to," and the same had expired.

This cause, with two others—one against the vessel for damage to other portions of the cotton belonging to another party, and the other by the owner of the brig against the entire cargo, to recover freight and primage—were tried together, before the District Court, which decided that the vessel was liable for the "sea damage" to the cotton consigned to the libellant. An interlocutory decree was accordingly entered, and after reference to a commissioner the parties agreed upon the amount of the "sea damage," and the commissioner made his report accordingly; upon the coming in of which, a final decree was entered for the damages so ascertained, deducting therefrom the amount of freight chargeable upon the libellant's cotton.

The claimant appealed from this decree (and the decrees in the other cases) to the Circuit Court, and the three causes were again heard together before Mr. Justice *Nelson,* who modified the decrees below, and decreed the whole amount of the damages, without deducting the freight on the cotton. The claimant appealed to the Supreme Court.

The facts of the case are briefly as follows: In May, 1854, the brig Water Witch, the property of Clifton, but at that time chartered by a firm in New Orleans, lay in the Bay of Matagorda, Texas, waiting for a cargo. A quantity of cotton having offered for shipment, a special contract was made

between the shipper at Lavacca and one Mitchell, who represented the charterers. By this contract the shipper was to deliver the cotton at Lavacca, to be received on lighters by Mitchell, and placed by him, at his expense, on board the vessel, to be carried to New York, for the freight of one and a quarter cents per pound. The vessel lay at the port of Indianola, situate in the same bay as Lavacca, but several miles distant from that place. The cotton was carried on lighters from Lavacca to the vessel. After it was delivered from the lighters, and received on board, the master refused to sign the bills of lading, upon the ground that the cotton was not in good order and condition. The agent also objected to the bills of lading, because they did not contain a stipulation that part of the cotton might be shipped on deck. The shipper refused to admit such a stipulation, as it was not contained in the agreement between the parties. Pending the dispute, the master sailed for New York with his cargo. The shipper, on learning that the vessel had sailed, leaving the bills of lading unsigned, forwarded them to the consignees named in them, with a letter stating the circumstances. The consignees made advances upon the cotton. On the arrival of the vessel at New York, the master notified the consignees, and discharged his cargo, but in a badly damaged condition. He also demanded his freight, which they refused to pay. Whereupon the several parties instituted their suits.

*Mr. Donohue,* of New York, for appellant. The libellants, Sheldon & Co., show no title or interest in the cotton to sustain their libel. They were not owners or shippers of the cotton nor assignees of any contract, by bill of lading or otherwise, on the part of the vessel or its owners, which brought them into any relation of contract with, or claim against, the vessel. They made no advances upon the faith of any bill of lading or other contract of the vessel, and there is no evidence that their advances, in whatever shape, exceed the value of the cotton as it came to their hands. The whole right or claim for damage is still vested in the owners of the cotton, and the relation of these libellants to those owners would not bar the latter from an independent

*The Water Witch.*

or subsequent suit. For these reasons, irrespective of the merits of the controversy, the libels for damage should be dismissed.

The owners and shippers of the cotton (supposing the libellants to represent them) have no claim for damages against the vessel or its owners, unless such damage arises from some breach of contract with, or duty towards the shippers, obligatory on the vessel and its owners. No such contract or duty can arise, unless entered into or assumed by the owners of the vessel, directly or through some authorized agent.

Mitchell, the party who made this contract, was the agent or broker of the charterers, and had no employment for, or authority from, the vessel or its owners. It was competent for the charterers to make such contract as they saw fit with shippers, and they would be bound by it. The vessel they had no authority to bind. But, if the contract in any way affected the vessel or its owners by way of contract or duty, no breach of contract or duty thereunder has been shown by the libellants. The vessel took proffered cargo to the extent of its capacity, stowing its hold full, and then taking a deck load. If the shippers were unwilling to ship cargo on deck subject to all the risks of such lading, and the contract with Mitchell entitled them to under-deck lading of the whole quantity named, they should have withheld the cargo, and sought indemnity for not taking it. As the vessel gave no admission of good order on receipt of the cotton; as, by all the evidence, it appears that the cotton was badly damaged when put on board, and as the voyage shows marine disaster, which accounts for all the sea damage, the burden is on the shippers to show both bad stowage and damage therefrom. The Circuit Court clearly erred in increasing the claim of the libellants on their damage. There was no appeal by them, and the Circuit Court could not increase the damage.

*Mr. Owen*, of New York, for respondent. The respondent was the consignee of the cotton in question, and entitled, not only to receive the same, but also to maintain this action for the damage which it sustained on the voyage to New York. No reasonable doubt could be entertained upon this subject

if the bills of lading which were transmitted by the shipper to the respondent had been signed by the master of the vessel, or by some person lawfully authorized. *Lawrence* vs. *Minturn,* (17 How., 100;) *McKinlay* vs. *Morrish,* (21 How., 343.) The fact that the bills of lading were not so signed does not, under the circumstances of this case, affect the question, for the respondent was, in fact, the consignee, and was so recognised and treated by both parties. A bill of lading, duly signed by the master, is not essential to a legal and valid consignment. Goods may be consigned verbally, as well as by writing. *The Peytona,* (2 Curtis, 26, 27.) Even admitting that the respondent was not a consignee created in the customary way, still he was the agent of the shipper, and expressly authorized "to recover the cotton, and proceed against the vessel for damages," which authority, coupled with his interest in the cotton, by reason of the advance made thereon, entitled him to maintain this suit. *Houseman* vs. *The North Carolina,* (15 Peters, 40, 49;) *Fritz* vs. *Ball,* (12 How., 466;) *McKinlay* vs. *Morrish,* (21 How., 343;) *Lawrence* vs. *Minturn,* (17 How., 100.)

Having received the cotton on board, the vessel became responsible for its proper stowage and protection during the voyage. The contract, though silent as to the place where the cargo is to be carried, clearly implies that it was to be carried under deck. Such is the legal effect of bills of lading where nothing is mentioned on the subject. *Vernard* vs. *Hudson,* (3 Sumn., 405;) *The Peytona,* (2 Curtis, 21.) In the absence of any express agreement upon the subject the law determines the question between the parties, and requires the cargo to be carried under deck. *The Rebecca,* (Ware, 188;) *The Paragon,* (Ware, 326.)

The vessel was liable, under the circumstances, for all damages, except such as arose from the "act of God." The water which accumulated in the hold was not simply an act of God, but it arose from the "fault or negligence of man." *The Rebecca,* (Ware, 188;) *Crosby* vs. *Grinnell,* (9 Leg. Obs., 281;) (2 Greenl. Ev., p. 212, § 219;) *The Reeside,* (2 Sumn., 267.)

Mr. Justice GRIER. The decree in favor of the libellant

in the Circuit Court was for a much larger sum than that rendered in the District Court, and as there was no cross appeal by the libellant, the decree of the Circuit Court is now challenged as erroneous for that reason; but this apparent inconsistency will be found not to exist in reality, by a short reference to the history of the case, as exhibited by the record.

The libellant claimed as consignee of two hundred bales of cotton shipped on board the Water Witch, to be carried from Lavacca, in Texas, to New York. The libel charged that the cotton had been greatly injured by reason of bad stowage and want of care on the part of the master and crew of the vessel.

As an excuse for not tendering freight, the libel alleged that the damage to the cotton far exceeded the freight and primage. Another consignee filed his libel at the same time for that portion of the cotton consigned to him, with the same allegations, and the claimants of the ship filed their libel against the cotton for freight and primage. These three suits, all depending on the same facts, were tried as one.

The great question of the case was, whether the damage, which it was admitted the cargo had received, was caused by the fault of the vessel, or before it was received on board—that is, whether it was sea damage, or country damage; and, if sea damage, whether the vessel was liable for it. The District Court decided that the vessel was liable for the sea damage, and sent the cases to a master to report the amount of sea damage suffered by the cotton, and the sums severally due by the consignees for freight. Having these data by the report, that court, instead of entering a decree for each libellant for the sum found due to him, made a set-off of the freight due the ship against the amount of damage suffered by the cotton, giving a decree for each consignee for the balance, deducting freight, and dismissing the libel of the owners. The claimant of the ship appealed, in all the cases, to the Circuit Court. The several amounts found due by the master's report were adopted by that court, and the decree in each case corrected, so that the decree for the several consignees was for the whole damage, without set-off, and a decree in favor of the ship for.

freight found to be due on the cotton, leaving the set-off to be made by the parties, or by order of the District Court. The amendment made by the Circuit Court was in fact beneficial to the owners of the ship, as they recovered costs in their own suit. The court rightly decided "that the parties could not split up the claim for damages by applying a portion in extinguishing the freight money, and then ask a decree for the excess of this sum."

The appellants have, therefore, no reason to complain of the decree on this ground.

The amount of sea damage, as assessed in the report, was admitted to be correct. The refusal of the master of the ship to sign bills of lading could not affect the case. The ship having received the cargo, and carried it to the consignees in New York, and then libelled the cargo for freight, is estopped to deny her liability to deliver in like good order as received, with the usual exceptions.

It has been contended, that the language of the written contract between Mitchell and Forbes permitted the cargo to be carried on deck, and that the phrase "*capacity of the vessel*" admitted of such construction; but the fact that the owners of cargo refused to have such an agreement made a part of the bills of lading, and the agreement to pay under-deck freight, repel any such doubtful inference from the phrase. The evidence does not support the allegation of any agreement by the shippers, that the cotton, or any portion of it, should be carried on deck. The objection that Sheldon was not consignee, or if so, had no title to support the action, has no foundation in fact or in law. The claimants treated him as such, and as such he had made advances on the cargo.

Whether this sea damage was caused, as charged in the libel, by the fault of the master or the ship, was a question of fact, and encumbered, as usual, with a mass of conflicting testimony and opinions. The weight of the testimony, as decided by the judges of both courts, inclined in favor of the libellant, and we see no reason to differ from them. The weight of testimony is not always with numbers, and this court should not have their time spent in hearing arguments whether the eleven

deponents on one side ought to be believed rather than ten on the other. In such cases, the concurrent finding of two courts ought to satisfy the losing party.

*The decree of the Circuit Court is affirmed, with costs.*