## THE SARNIA. *

(Circuit Court of Appeals, Second Circuit. December 14, 1921.)

No. 44.

1. **Shipping ⊜123—Shipment under clean bill of lading imports obligation to stow under deck.**

Where goods are shipped under a clean bill of lading, the obligation is that they are to be put under deck, unless there is an express written agreement to the contrary, or a custom to the contrary is proven.

2. **Evidence ⊜442(8)—Carrier may prove agreement for deck stowage, where bill of lading is silent.**

Where a bill of lading is silent as to stowage, the shipowner may prove an agreement for deck carriage when a claim for loss is made.

3. **Shipping ⊜141(2)—Breach of contract to stow goods under deck, causing damage, held to vitiate valuation clause of bill of lading.**

When a shipowner issues a bill of lading which calls for shipment under deck, and then carries the goods on deck, and by reason of their exposed position they are damaged, his breach of the contract deprives him of the benefit of the valuation clause in the bill of lading.

Mack, Circuit Judge, dissenting.

Appeal from the District Court of the United States for the Southern District of New York.

Suit in admiralty by L. Telles De Vasconcellas against the steamship Sarnia; the Sarnia Steamship Corporation claimant. From the decree, libelant appeals. Reversed.

The libelant is a citizen of the republic of Portugal and a resident of the city of Lisbon therein. The libel was filed against the steamship Sarnia, which is a general ship engaged as a common carrier of merchandise for hire between the port of Lisbon, in Portugal, and the port of New York.

The libel alleges that on November 4, 1915, the libelant purchased from the King Motor Company, one eight-cylinder five passenger King touring car, one eight-cylinder King chassis, and one case of advertising matter to be forwarded to the libelant at Lisbon; that on December 21, 1915, the King Motor Car Company by their agents shipped and placed on board the steamship aforesaid, then lying at the port of New York and bound for the port of Lisbon, the aforesaid automobiles and advertising matter in good order and condition to be carried by the said ship under deck to Lisbon, and there to be delivered in as good order and condition as when shipped to the libelant or his assigns in consideration of the payment of the freight and in accordance with the valid terms of the bill of lading; that on December 23, 1915, the ship sailed, having on board the freight above referred to, but that it was not stowed under deck, but was wrongfully and improperly loaded on the deck of the steamer; that on January 19, 1916, the steamer arrived at Lisbon and made delivery of the shipment above described, but not in like good order and condition as when shipped, but was seriously damaged by water, and through the fault and negligence of the ship, her owners and charterers in respect of the loading, stowage, custody, and care of the shipment, as a result of which the property became a total loss. The libelant alleged that he had been consequently damaged in the sum of $2,700, and that no part thereof had been paid, although the same had been duly demanded.

The Sarnia Steamship Corporation, claimant of the ship, put in an answer in which it admitted and alleged that the freight above described was received and loaded on the vessel in apparent good order and condition to be transported and delivered to libelant in accordance with the terms of a certain bill of lading issued to the shipper, which had been previously signed by the master

⊜For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

*Certiorari denied 257 U. S. —, 42 Sup. Ct. 382, 66 L. Ed. —.

acting in behalf of the charterer, and that the shipper agreed with the charterer that the cases containing the touring car and chassis should be transported on the deck. It admits that the two cases above mentioned were stowed on the deck as agreed with the shippers, and that the cases containing the advertising matter was stowed under deck, and that all this was in accordance with a specific agreement therefor. It admits that at the time of delivery the two cases carried above deck were in a damaged condition, because of heavy seas which boarded the steamship in the course of a heavy storm and broke the cases and did much damage to the vessel itself. The answer, as a further defense, relied on the terms of the bill of lading hereinafter referred to in the opinion.

The court below has found as a fact that it was not proven that the bill of lading was issued before the receipt of the goods on the dock. He also held that such a bill of lading as was issued conclusively imported under-deck stowage, and that the contract was breached by putting the machines on deck. He also held that this breach did not avoid the valuation clause, contained in the bill of lading, which reads as follows: "1. It is also mutually agreed that the value of each package receipt for as above does not exceed the sum of one hundred dollars ($100) unless otherwise stated herein on which basis the rate of freight is adjusted."

The libelant obtained a decree in the court below in the sum of $200, with costs amounting to $66.35.

Harrington, Bigham & Englar, of New York City (Oscar R. Houston, of New York City, of counsel), for appellant.

Hunt, Hill & Betts, of New York City (John W. Crandall and H. Victor Crawford, both of New York City, of counsel), for appellee.

Before ROGERS, MAYER, and MACK, Circuit Judges.

ROGERS, Circuit Judge (after stating the facts as above). This suit is brought on the part of the shipper to recover damages for injury to the goods shipped, arising from their wrongful stowage above deck, whereas they should have been carried under deck.

[1] Where goods are shipped under a clean bill of lading the obligation is that they are to be put under deck, unless there is an express written agreement to the contrary or a custom to the contrary is proven. The Water Witch, 1 Black, 494, 17 L. Ed. 155; The Kirkhill, 99 Fed. 575, 39 C. C. A. 658; The New Orleans (C. C.) 26 Fed. 44; The Gran Canaria (D. C.) 16 Fed. 868; Two Hundred and Sixty Hogsheads of Molasses, 24 Fed. Cas. 445, No. 14,296; Vernard v. Hudson, 28 Fed. Cas. 1162, No. 16,921.

[2] But as silence in a bill of lading as to stowage is not an express contract to carry under deck the shipowner may prove an agreement to carry on deck where a claim for loss is made. The Delaware v. Oregon Iron Co., 14 Wall. 579, 20 L. Ed. 779. It was attempted in the court below to prove that there was an agreement that the shipment might be carried above deck, but the proof offered of such an agreement was not sufficient, and the court found, and we have no disposition to reverse the finding, that no such agreement was made.

[3] This court, therefore, is confronted in this case with a question of law, which is both interesting and important. The question is this: When a shipowner issues a bill of lading which calls for a shipment under deck, and then carries the goods on deck, is his breach of the contract of shipment such as to deprive the shipowner of the benefit

of the valuation clause? In the court below the view was taken that there was a plain breach of contract, in that the goods had been stowed above deck, but that this deviation did not vitiate the valuation clause, by which the parties had agreed that the motor cars for purposes of shipment were to be deemed worth $100 apiece on which basis the rate was adjusted. The general rule undoubtedly is that, if the shipowner commits a breach of the contract of affreightment which goes to the essence of the contract, he is not entitled after such breach to invoke the provisions of the contract which are in his favor. We are to inquire whether the valuation clause constitutes an exception to the general rule.

But it is urged that the question can hardly be regarded as an open one in this court, in view of the decision in Calderon v. Atlas Steamship Co., 170 U. S. 272, 18 Sup. Ct. 588, 42 L. Ed. 1033. In that case goods were shipped from New York to Savinilla on the steamer Ailsa. The goods were not delivered when the ship arrived at destination, but were carried back to New York and then reshipped by the carrier on the steamer Alvo, which was lost at sea in a hurricane. The bill of lading contained a clause designed to limit the liability of the carrier to $100 per package. It was urged that the final loss of the goods was due to hurricane, an extraordinary sea peril, and that there was no liability as the bill of lading exempted from liability from perils of the sea; and it was further contended that, if a liability existed, it could not exceed $100 per package because of stipulations in the bill of lading, as a value in excess of $100 per package had not been disclosed, nor any agreement made at the time of shipment for the payment of freight at an extra rate. The case arose in the Southern district of New York and was heard before District Judge Addison Brown. He held that the case involved the principle of deviation, and that in marine transportation deviation made the carrier liable as an insurer, both because of the carrier's violation of the contract and because the deviation avoided the shipper's insurance and he had no opportunity to secure further insurance. The court sustained the validity of the clause as to value and limited the recovery of the cargo owner to the agreed valuation per package, allowing a recovery of $2,900, instead of $5,600, the full value. 64 Fed. 874.

The case was brought on appeal to this court, which affirmed the decision below. This court, in the opinions rendered, considered at length the question of the validity of the valuation stipulation and sustained its validity, but said nothing as to the phase of the subject now being considered. 69 Fed. 574, 16 C. C. A. 332. The case was then carried to the Supreme Court, on a writ of certiorari. That court held that the carrier was liable, to that extent agreeing with the courts below; but it reversed the decree, and held the valuation clause invalid, because it stipulated against any liability whatsoever on the part of the carrier where the goods were worth over $100 per package.

The exact question presented in the case now to be decided was not discussed—was not so much as referred to—in the opinion of the District Court, or in those delivered in this court, or in that of the Supreme Court. In the absence of any allusion to the subject in any of

the opinions in the case, and especially in view of the fact that the opinion of this court was reversed, we feel that this court is free to consider the question now as res integra.

In the present case there is no doubt that the valuation clause inserted in the bill of lading was valid at the time it was made. It did not stipulate against any liability whatever if the value of each package exceeded $100, but simply provided that the value of each package did not exceed $100. The leading case in the federal courts as to the validity of such a valuation clause is that of Hart v. Pennsylvania Railroad Co., 112 U. S. 331, 5 Sup. Ct. 151, 28 L. Ed. 717. The court held that such an agreement, fairly entered into, where no deceit is practiced on the shipper, is just and reasonable, and not contrary to public policy, and must be upheld. To the same effect are numerous cases, among which are the following: Adams Express Co. v. Croninger, 226 U. S. 491, 33 Sup. Ct. 148, 57 L. Ed. 314, 44 L. R. A. (N. S.) 257; Pierce Co. v. Wells, Fargo & Co., 236 U. S. 278, 35 Sup. Ct. 351, 59 L. Ed. 576; Reid v. Fargo, 241 U. S. 544, 36 Sup. Ct. 712, 60 L. Ed. 1156; Cleveland, Cincinnati, Chicago & St. Louis Railway Co. v. Dettlebach, 239 U. S. 588, 36 Sup. Ct. 177, 60 L. Ed. 453; The Morro Castle (D. C.) 168 Fed. 555; Hohl v. Norddeutscher, 175 Fed. 544, 99 C. C. A. 166; Kuhnhold v. Compagnie Générale Transatlantique (D. C.) 251 Fed. 387; Frederick Leyland & Co., Limited, v. Hornblower, 256 Fed. 289, 167 C. C. A. 461.

Conceding, then, the validity of the valuation clause at the time the contract was made, we are brought to inquire whether it was subsequently invalidated by the failure of the carrier to perform his undertaking in accordance with his agreement. In entering upon that inquiry it is important to keep in mind certain principles of law governing contracts of shipment made between the shipper and the shipowner.

Now, it must be admitted, in the first place, that if a shipowner issues a bill of lading which calls for a shipment under deck, and then carries the goods above deck, he commits a gross violation of his contract. He thereby not only renders void the shipper's marine insurance, but he exposes the goods to a much greater peril of the sea. It has been established law for hundreds of years that a plain bill of lading imports a shipment under deck. The Water Witch, 1 Black, 494, 17 L. Ed. 155; The Kirkhill, 99 Fed. 575, 39 C. C. A. 658; Vernard v. Hudson, 28 Fed. Cas. 1162, No. 16,921, 3 Sumn. 405. And it is equally well established that, where property is insured under a general description such as cargo, goods, etc., it only covers such property as is stowed under deck, unless it is specified that it is to cover deck cargo, or there is a general usage to carry that particular kind of property above deck. Hazelton v. Manhattan Ins. Co. (D. C.) 12 Fed. 159; Appollinaris Co. v. Nord Deutsche Ins. Co., [1904] 1 K. B. 252, 9 Aspin. 526; Allen v. St. Louis Ins. Co., 85 N. Y. 473; Adams v. Warren Ins. Co., 22 Pick. (Mass.) 163. To carry above deck what was insured to be carried below deck vitiates the insurance For the insurer, as Lord Mansfield said in Pelly v. Royal Exchange Association Company, 1 Burr. 341, in estimating the price at which

he is willing to indemnify the trader against all risks takes under consideration the usual course and manner of carrying the goods. As he there stated:

"What is usually done by such a ship with such a cargo in such a voyage is understood to be referred to by every policy, and to make a part of it as much as if it was expressed."

If carrying above deck goods which should have been carried below deck vitiates the policy of insurance, as between the insurer and insured, we see no reason why, for like reasons as between the carrier and the shipper, a like breach of the contract of carriage should not vitiate the valuation clause; for the shipper, in fixing the amount in such a clause, takes under consideration the risk to which his goods are to be exposed and the manner of their carriage. The fact that the goods are to be carried below deck is understood between the parties, and is as much a part of the valuation clause as it is of any other of the clauses in the bill of lading. It seems to us most unreasonable to hold that, as between the shipper and the carrier, the former should be estopped by a valuation clause, where the latter's own misconduct has breached the agreement and destroyed the conditions upon which the estimate of value was predicated. In fixing the value the shipper was undoubtedly influenced by the fact that the goods were to be carried below deck, and not exposed to the perils of carriage above deck.

It has long been established law that a deviation changes the character of a voyage so essentially that the shipowner who has deviated cannot claim the benefit of the terms of the bill of lading. The unjustifiable deviation vitiates or avoids the contract of carriage. Giband v. Great Eastern Ry. Co., [1921] 2 K. B. 426; Morrison v. Shaw, [1916] 2 K. B. 783, 86 L. J. K. B. 97; Internationale, etc., Werken v. McAndrew & Co., [1909] 78 L. J. K. B. 691, 693; Thorley v. Orchis Steamship Co., [1907] 1 K. B. 660, 76 L. J. K. B. 106, 595, 10 Asp. M. C. 431; Laduc v. Ward, 20 Q. B. D. 475; Lawrence v. Minturn, 17 How. 111, 15 L. Ed. 58; Constable v. National S. S. Co., 154 U. S. 51, 14 Sup. Ct. 1062, 38 L. Ed. 903; Mobile & Montgomery R. Co. v. Jurey, 111 U. S. 584, 4 Sup. Ct. 566, 28 L. Ed. 527; Chubb v. 7800 Bushels of Oats, 5 Fed. Cas. 663, No. 2,709; Knox v. The Ninetta, 14 Fed. Cas. 827, No. 7,912; Thatcher v. McCulloh, Olc., 365, Fed. Cas. No. 13,-862; The Rebecca, 20 Fed. Cas. 373, No. 11,619; The Thomas P. Thorn, 23 Fed. Cas. 1002, No. 13,927; Stinson v. Wyman, 23 Fed. Cas. 108, No. 13,460; Vernard v. Hudson, 28 Fed. Cas. 1162, No. 16,-921; The Waldo, 28 Fed. Cas. 1356, No. 17,056; The Wellington, 29 Fed. Cas. 626, No. 17,384; Pacific Coast Co. v. Yukon Independent Transportation Co., 155 Fed. 29, 83 C. C. A. 625; The Citta di Messina (D. C.) 169 Fed. 472, 475.

It is true that in the case now before us the goods were shipped from New York to Lisbon, Portugal, and that no complaint is made that the ship called at any port at which it was not entitled to call, or that it deviated from its proper and customary route. But the term "deviation," in the law of shipping, has been held to have a varied meaning and wide significance. Thus in The Indrapura (D. C.) 171 Fed. 929, 931, the court said, in speaking of the meaning of this term:

"It was originally employed, no doubt, for the purpose its lexicographical definition implies, namely, to express the wandering or straying of a vessel from the customary course of voyage; but it seems now to comprehend in general every conduct of a ship or other vehicle used in commerce tending to vary or increase the risk incident to a shipment."

And in the above case the court held that dry-docking the ship was a deviation in the law of shipping and rendered the shipowner liable. The court further said:

"Whether there was an increase of risk or not, the elevation of the ship out of its natural element after the merchandise was received for transportation was an act beyond question not contemplated by the shipper, and was assuredly a breach of the implied contract that the ship should remain upon the water and proceed with all practicable dispatch to destination; and the only thing that would or could justify a deviation from this course is an absolute maritime exigency."

If a shipowner carries the cargo on deck, he breaks the contract contained in the bill of lading, and so cannot be protected by the exception of jettison. Royal Exchange Shipping Co. v. Dixon (1886) 12 A. C. 11, Q. B. 266, 6 Aspinall (N. S.) 92, 94. In Scrutton on Charter Parties and Bills of Lading (8th Ed.) p. 134, that writer states the rule as follows:

"Goods are to be loaded in the usual carrying places. The shipowner or master will only be authorized to stow goods on deck: (1) By a custom binding in the trade or port of loading, to stow on deck goods of that class on such a voyage; or (2) by express agreement with the shipper of the particular goods so to stow them. The effect of deck stowage not so authorized will be to set aside the exceptions of the charter or bill of lading and to render the shipowner liable under his contract of carriage for damage happening to such goods."

In Carver on Carriage by Sea (6th Ed.) p. 398, it is said:

"A deviation is such a serious matter, and changes the character of the voyage so essentially, that a shipowner who has been guilty of a deviation cannot be considered as having performed his part of the bill of lading contract, but something fundamentally different, and therefore he cannot claim the benefit of stipulations in his favor contained in the bill of lading."

In Parsons on the Law of Shipping, vol. 1, p. 172, note, it is said:

"It is well settled that, if the vessel deviates and the cargo is insured, the risk terminates, and the underwriters are exonerated. It follows, as a necessary consequence, that the shipowner, having put an end to the contract existing between the freighter and the underwriter, should stand in the place of the latter and assume his risks."

See Abbott's Merchant Ships and Seamen (14th Ed.) p. 525.

In Ellis v. Turner, 8 T. R. 531 (1800), it was held that deviation deprived the shipowner of the benefit of public notice limiting liability for loss by negligence of the master or crew to 10 per cent. In Sleat v. Flagg, 5 Barn. & Ald. 342 (1882), the carrier was held liable for full value of a lost package of bank notes, accepted to be carried by mail-coach, but which had been actually sent forward by another coach. This deviation cost the carrier the benefit of a clause limiting the liability to £5 per parcel.

In Balian & Sons v. Jloy, Victoria & Company, Ltd., 6 T. L. R. 345 (Ct. of Appeals, 1890), it was held that deviation ended all the stipula-

tions in the bill of lading in favor of the shipowner including limitation of liability per package. It was declared that the cases showed that deviation deprived the shipowner of all protections in the bill of lading; that it was undoubtedly one of all the customary stipulations, such as those relating to a copied word, and that a stipulation limiting the extent of the shipowner's liability for damage to goods was of precisely the same kind as the other limitations, which were admittedly done away with by the deviation; that there was no reason for making any distinction between them, and that the limitation of liability clause was done away along with the others by the deviation.

In Pacific Coast Co. v. Yukon Independent Transportation Co., 155 Fed. 29, 83 C. C. A. 625, the bills of lading contained a clause providing that a claim for loss or damage to any of the property should be restricted to the cash value of the same at the port of shipment at the date of shipment unless otherwise agreed. There was a deviation, and the Circuit Court of Appeals for the Ninth Circuit held that the carrier lost the benefit of the clause and of other limitations of liability in the bills of lading by the deviation.

An analogous question, although it related to land transportation, was before the Supreme Court of Massachusetts in 1911 in McKahan v. American Express Co., 209 Mass. 270, 95 N. E. 785, 35 L. R. A. (N. S.) 1046, Ann. Cas. 1912B, 612. The agreement in that case related to the transportation of horses from La Fontaine, Ind., to Boston, Mass. The contract provided that the company would furnish free transportation for an attendant and that the time of the transportation should not exceed 36 hours. During the transportation the company separated the horses from their attendant furnished by the shipper, and they were detained in the cars for 44 hours, instead of 36, without being fed or watered. The shipper, by the contract, declared the value of the horses to be $75 each, and agreed that the company should be liable in no event for injury to any of the horses in excess of the value declared. The rate to be charged for the transportation was determined by the value declared. It was held that the carrier's departure from the agreed method of transportation displaced the contract of carriage, and released the shipper from all limitations upon the carrier's liability which he agreed to therein, and that he was entitled to recover from the carrier full compensation for his loss. In its opinion the court said:

"In the case at bar the shipper's agreement that the horses were to be valued at $75 each was plainly based upon the risks incident to the transportation agreed upon, namely, transportation of the horses in care of an attendant. The breach by the carrier of its agreement to transport the horses in the care of an attendant was the proximate cause of the loss which occurred; and this case could be decided on the ground that it could not have been the intention of the parties to the original contract of shipment that the shipper should be held to his agreement as to the sum at which the horses were to be taken in case the carrier did not transport them in care of an attendant. But we are of opinion that the rule as to deviation from route and departure from method of transportation rests upon the broader ground that in such case the original contract is wholly displaced, at least at the election of the shipper, and we prefer to place our decision on the doctrine."

In Dunseth v. Wade, 2 [Scam. (Ill.) 286, the court said:

"If a common carrier, [of that] character steamboats navigating our rivers must be classed, attempts [to p]erform his contract in a manner different from his undertaking, he becom[es an] insurer for the absolute delivery of the goods, and cannot avail himself [of] any exceptions made in his behalf in the contract."

A tort feasor cannot take advantage of his own wrong, nor lessen the measure of his liability, by invoking an agreed valuation which the plaintiff may have made for the purpose of reducing the freight rate. D'Utassy v. Barrett, 219 N. Y. 420, 424, 114 N. E. 786, 5 A. L. R. 979; Georgia Southern Ry. Co. v. Johnson, 121 Ga. 231, 48 S. E. 807; Central of Georgia R. Co. v. Chicago Portrait Company, 122 Ga. 11, 49 S. E. 727, 106 Am. St. Rep. 87; Merchants', etc., Transportation Co. v. Moore, 124 Ga. 482, 52 S. E. 802. In D'Utassy v. Barrett, supra, the Court of Appeals declares that—

"The law remains that the carrier may not claim a limitation of liability to a certain amount for its affirmative wrongdoing when the plaintiff makes proof thereof."

We have been able to find no sufficient reason for distinguishing the valuation clause of a bill of lading from the other restrictive clauses in the bill, and for holding that the shipowner who performs his contract in a manner different from his undertaking may still claim the benefit of the stipulations respecting the value of the shipment, although he cannot claim the benefit of a single other stipulation in his favor found in the bill of lading. Neither upon principle nor upon the authorities do we think that such a distinction exists.

Decree is reversed, and cause remanded, with direction to take such further steps as may be necessary in accordance with this opinion.

MACK, Circuit Judge (dissenting). In Calderon v. Atlas Steamship Co., 170 U. S. 272, 18 Sup. Ct. 588, 42 L. Ed. 1033, the Supreme Court, reversing this court (69 Fed. 574, 16 C. C. A. 332), which, with Judge Wallace dissenting, had affirmed Judge Addison Brown's decision (64 Fed. 874), held the clause of the bill of lading there in question void because it interpreted the language as an exemption from all liability for property over $100 in value, not as a valuation of the property at $100 for the purposes of the transportation and of the freight charges. In all of the courts the law was deemed settled that such an exemption clause would be invalid as a limitation of liability. The necessity of determining whether it was an exemption or a valuation clause—and it was on the interpretation that the members of this court differed—resulted from the implied assumption that a valuation clause would have been valid even in a deviation case. The validity of the valuation clause was not thus assumed without argument; the briefs filed in this court discuss the very question. The case is therefore at least persuasive that a valuation clause which, as distinguished from an exemption clause, has been upheld as valid in the federal courts, at least since Hart v. Pennsylvania R. R. Co., 112 U. S. 331, 5 Sup. Ct. 151, 28 L. Ed. 717, measures the amount of recovery even in a deviation case.

In the paragraph following the language quoted in the opinion of

my Brethren from D'Utassy v. Barrett, 219 N. Y. 420, 114 N. E. 786, 5 A. L. R. 979, the court says:

"The distinction must be borne in mind between a limitation of liability and an agreed valuation in case of liability. When it is urged that the limitation of value should not be applied to any case of theft by the carrier's employees, for the reason that the company is liable for such acts as if the company had been the thief, * * * the argument loses sight of this distinction. * * * The liability may exist and the valuation of the shipment in case of liability may be agreed upon when the rates for transportation are based on the valuation of the goods entrusted to the carrier. * * * While the rule should not be extended to permit a carrier to realize a profit by converting valuable shipments, such conversions are so unusual as to be almost negligible. It would be unjust and contrary to the policy of the law to permit the agreed valuation to be overthrown for the purpose of enabling the shipper to obtain a recovery in excess thereof in a suit for loss or damage on any theory of trover or conversion for loss of goods by wrongful deliveries or acts of employees for their own benefit, based, not on the wrongful misconduct of the carrier as such, but on the act of the employee."

In that case, as in Moore v. Duncan (6th C. C. A.) 237 Fed. 780, 150 C. C. A. 534 (Adams Express Co. v. Berry & Whitmore Co., 35 App. D. C. 208, 31 L. R. A. [N. S.] 309, contra), a valuation clause was upheld, even when the loss resulted from theft by the carrier's employees. It does not follow, however, that the valuation clause would serve to limit liability in all cases. It would be clearly against public policy to enrich the carrier thus to limit its liability and thereby to enrich itself, by an actual taking and retention of goods, as distinguished from a conversion due to negligent deviation, or from an imputed conversion due to the acts of employees for their own personal enrichment.

It is unnecessary in this case to consider the effect of a deviation ordered or directed with "privity or knowledge" of the owner, and not merely of the servants, including therein even the master of a vessel, or whether the liability is increased, if such a deviation be for the very purpose of enrichment by actually converting the goods to such owner's use. Even assuming—though without assenting thereto—that an improper shipment on deck is equivalent to a deviation, clearly in the case at bar there was no conversion with knowledge or privity of the shipowner, or for its enrichment. For while evidence of a contemporaneous oral consent to shipment on deck of goods which, but for consent, the carrier would be obligated, under a clean bill of lading, to carry under deck, is held in The Delaware, 14 Wall. 579, 20 L. Ed. 779, not admissible to vary even this implied obligation, it would seem clearly admissible on the question of the carrier's intent thereby actually to convert the goods and thus to enrich itself.

In this case, as I interpret Judge Hough's opinion—contrary to the views of my Brethren—he has found that there was such oral consent by the shipper. He says:

"The motors were only deck-laden because of and after an agreement on the part of Spiero [shipper's representative] that they would be insured against sea peril as deckladen—the charterers paying the extra premium."

The testimony clearly shows that no bill or request for such extra premium was ever sent to the charterers. There is a liability to the holder of the bill of lading for the breach of the implied under-deck

shipment obligation. It is immaterial whether this breach be called a deviation, or treated as analogous to a deviation, or not. The liability is that of an insurer in so far as the loss or damage resulted from this breach; that is, the benefit of the exceptions, in the bill of lading, to such liability is lost.

But the question remains: Liability for what and in what sum? In my judgment, Judge Hough has given the correct answer in the circumstances of this case of a breach not by or with the privity or knowledge of the owner and/or for his personal gain—liability only for the agreed value of the goods as stated in the bill of lading.