M. & T. Trust Company, Appellant, *v.* Export Steamship Corporation, Respondent.*

Fourth Department, September 28, 1932.

* Revg. 143 Misc. 1.

*Ray M. Stanley* [*Ellis H. Gidley* and *Arthur E. Otten* of counsel], for the appellant.

*Lyman M. Bass* [*Herbert K. Stockton* and *William P. Stewart* of counsel], for the respondent.

EDGCOMB, J.   During the autumn and winter of 1928 the Stewart Motor Corporation made various shipments of motor trucks and parts from Buffalo, N. Y., to Tangier and Casablanca, over the New York Central railroad from Buffalo to New York, and by defendant's steamships from New York to the Moroccan ports. In some cases through bills of lading were issued by the land carrier. In others the goods moved to New York city on local bills, and at New York bills of lading for the voyage were issued by the defendant. Two different forms of bills of lading were thus used, but the differences in them are immaterial on this appeal. In every case the bills covering the voyage were order bills, by the terms of which the shipments were consigned to the order of the Stewart Motor Corporation, notify Messrs. Agence Industrielle et Automobile, Casablanca. Drafts for the value of the shipments were drawn by the Stewart Motor Corporation upon the Agence Industrielle et Automobile payable to the plaintiff. These drafts, to which were attached the bills of lading indorsed by the Stewart Motor Corporation, came into the possession and ownership of the plaintiff, and were forwarded by it for collection to a correspondent in Morocco, the Banque Industrielle de l'Afrique du Nord. In violation of the express provision of the bills of lading, defendant delivered the goods specified in the bills of lading at the Moroccan port on November 13 and December 7, 1928, and on February 1, 1929, not to the consignee or upon its order, but to the notify party, the Agence Industrielle et Automobile, without requiring the surrender of the bills of lading. The deliveries to the notify party were made by the defendant, however, only upon receiving a bank guaranty for the defendant's protection.

This willful misdelivery constituted a conversion, and rendered the defendant liable to the plaintiff for damages unless, under the terms of the bills of lading, there exist circumstances sufficient to constitute a defense. (*Furman* v. *Union Pacific R. R. Co.*, 106 N. Y. 579; *Pere Marquette R. Co.* v. *French & Co.*, 254 U. S. 538.)

The defendant contends, and the learned trial court has determined, that such a defense, resting on the plaintiff's non-compliance with the provisions of the bills of lading respecting notice of loss and claim and limiting the time for the beginning of an action, has been made out. The clauses in the bill of lading are to the effect: (1) That notice in writing of any loss or damage

must be given to the carrier within thirty days after the goods leave the custody of the carrier; (2) that written notice of any claim must be filed within nine (or, according to the other form, within three) months after giving written notice of loss; (3) that suit to recover for any loss must be instituted within one year (or, according to the other form, within six months) after giving the written notice of loss. The time normally required for the transportation to Morocco is about one month. Between November 7, 1928, and January 7, 1929, the drafts had been presented for payment by the Banque Industrielle to the drawee Agence Industrielle et Automobile, but none of them was accepted or paid. It was not until August, 1930, that the Banque Industrielle notified the plaintiff of the misdeliveries. Thereafter, on December 4, 1930, the Banque Industrielle, under direction of the plaintiff and in its behalf, demanded of defendant's representative at the Morrocan ports payment of the drafts or, alternatively, the delivery to the plaintiff of the goods covered by the bills of lading. No other notice of loss or claim was ever given to defendant. This action for conversion was not brought until April 21, 1931. These facts show clearly that the terms of the bills of lading for the presentation to the carrier of notices of loss and claim were not complied with, and the action was not brought within the time limited by the bills of lading. If, therefore, these clauses of the bills are valid and, under the circumstances of this case, available to the defendant as a defense, the plaintiff cannot recover.

Limitations of time for the giving of notice of loss and claim, and for the beginning of action to be valid, must be reasonable. (*South & Central American Commercial Co., Inc.* v. *Panama R. R. Co.,* 237 N. Y. 287.) We agree with the learned trial court that the limitations here in question are, of themselves, reasonable. Nor do we find them violative of the Harter Act (U. S. Code, tit. 46, Shipping, §§ 190, 191). (*Aron & Co.* v. *Panama R. R. Co.,* 255 N. Y. 513.)

The crucial question upon this appeal, therefore, is whether the defendant is entitled to invoke these provisions under the circumstances which involve its own willful misdelivery amounting to conversion of the goods in question.

The established rule, as we understand it, is that a carrier may not claim to be relieved from liability for his affirmative and willful wrongdoing by reason of a failure of the injured party to comply with the terms of the bill of lading as to notice of loss and claim and time for bringing action. (*Magnin* v. *Dinsmore,* 62 N. Y. 35; *The Sarnia,* 278 Fed. 459; certiorari denied, 258 U. S. 625; *St. Johns*

*Corp.* v. *Companhia Geral, etc.,* 263 id. 119; *Bank of California* v. *International Mercantile Marine Co.,* 40 F. [2d] 78; *Ridgway Grain Co.* v. *Penn. R. R. Co.,* 228 Penn. St. 641.) The breach of contract by the defendant in willfully misdelivering these goods was a willful disregard of the rights of the owner of the goods of the same character as a deviation in voyage where the principle has found frequent application. (See *The Sarnia,* 278 Fed. 459, 463.)

The defendant puts reliance upon decisions rendered by the courts in cases arising under the Interstate Commerce Act which, it is claimed, are in conflict with the general principle as it has been stated above, and which the defendant claims establish the principle that even a conversion of the goods by the carrier does not relieve the shipper from the obligation to comply with the provisions for notice and beginning of suit in order to enforce his claim. (*Georgia F. & A. R. Co.* v. *Blish Co.,* 241 U. S. 190; *The Natal,* 14 F. [2d] 382; *American Railway Exp. Co.* v. *Levee,* 263 U. S. 19; *Missouri Pacific R. R. Co.* v. *Boone,* 270 id. 466; *Davis* v. *Roper Lumber Co.,* 269 id. 158; *Chesapeake & Ohio R. Co.* v. *Martin,* 283 id. 209.) All of these cases either arose under or there is discussed in the opinion bills of lading issued pursuant to the mandate of the Interstate Commerce Act (U. S. Code, tit. 49, Transportation, § 20, subd. 11, known as the Carmack Amendment, as amd.). The case which we are now considering does not arise under that act. Both appellant and respondent agree that the Interstate Commerce Act has no application because the ocean carriage here was from the United States to a non-adjacent foreign country, and the entire transportation, when the rail carriage is included, was not under a common control, management or arrangement for a continuous carriage or shipment, within the meaning of that act (U. S. Code, tit. 49, Transportation, § 1, subd. 1, ¶ a; Id. § 20, subd. 11; Id. § 25.) (*Loma Fruit Co.* v. *International Nav. Co.,* 11 F. [2d] 124.)

Section 91 of the Bills of Lading Act (U. S. Code, tit. 49, Transportation, chap. 4), which is applicable in the instant case, provides, with certain exceptions not material here, " If a carrier delivers goods for which an order bill had been issued, the negotiation of which would transfer the right to the possession of the goods, and fails to take up and cancel the bill, such carrier shall be liable for failure to deliver the goods to anyone who for value and in good faith purchases such bill, whether such purchaser acquired title to the bill before or after the delivery of the goods by the carrier and notwithstanding delivery was made to the person entitled thereto." The Bills of Lading Act does not require the issuance of a bill of lading, and has no provision analogous to that of the amended

Carmack Amendment, making an initial carrier liable. Nor does it contain any provision in respect to the limitations of time for giving notice of loss and claim or for the commencement of suit.

We are of the opinion that the language contained in the opinion in the *Blish Case* (241 U. S. 190) must be read as referring only to a case arising under the Interstate Commerce Act, Carmack Amendment, or some similar legislation. When a case arises under such legislation, such construction of the law as we think applicable here might well conflict with the purpose of the statute. So held the Federal Supreme Court in the *Blish* case. The language used in the opinion is significant. " It is urged, however, that the carrier in making the misdelivery converted the flour and thus abandoned the contract. But the parties could not waive the terms of the contract under which the shipment was made pursuant to the Federal Act; nor could the carrier by its conduct give the shipper the right to ignore these terms which were applicable to that conduct and hold the carrier to a different responsibility from that fixed by the agreement made under the published tariffs and regulations. A different view would antagonize the plain policy of the Act and open the door to the very abuses at which the Act was aimed." In the present case the bill of lading and its interpretation is not interwoven with tariffs or regulations, statutory restrictions or compulsion.

We reach the conclusion, therefore, that the language of the opinion in the *Blish* case, and the decision itself, must be confined to cases arising under the Interstate Commerce Act or similar legislation; that there is no such legislation applicable here; that the misconduct of the defendant in willfully disregarding the terms of the bills of lading, and delivering the goods to a party other than the consignee or his assignee, and without requiring the surrender of the bills of lading, was such a wrongful act in respect to the very essence of the contract that the defendant is not entitled to insist upon compliance by the plaintiff with the terms of the bills of lading in relation to notice of loss and claim, and the time for beginning suit.

The judgment should, therefore, be reversed on the law, and judgment in favor of the plaintiff granted for the stipulated amount of damages.

All concur; TAYLOR, J., not sitting.

Judgment reversed on the law, with costs, and final judgment directed in favor of the plaintiff for the stipulated amount of damages, with costs. Certain conclusions of law disapproved and reversed and new conclusions made.