**GENETICS INTERNATIONAL,**
**Plaintiff–Counter-defendant–Appellant,**

v.

**CORMORANT BULK CARRIERS, INC.,**
**Defendant–Counter-claimant–Appellee.**

No. 88–6251.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted May 5, 1989.

Decided June 14, 1989.

---

David E.R. Woolley, Williams, Woolley, Cogswell, Nakazawa & Russell, Long Beach, Cal., for plaintiff-counter-defendant-appellant.

Gregory W. Poulos, Graham & James, Long Beach, Cal., for defendant-counter-claimant-appellee.

Before POOLE, BEEZER and TROTT, Circuit Judges.

POOLE, Circuit Judge:

Genetics International (Genetics), a California corporation which exports wheatseed, appeals a district court order granting the shipper Cormorant Bulk Carriers, Inc. (Cormorant) summary judgment on its claim for unpaid freight.

This case stems from two shipments of wheatseed by Genetics from Port Huen- eme, California to Damman, Saudi Arabia on board vessels owned by Cormorant. Genetics paid for the first shipment in full, but later alleged that the cargo had been damaged by negligent handling. Soon after paying for the first shipment, Genetics contracted with Cormorant for transport of a second shipment of wheatseed to Saudi Arabia. Genetics does not dispute that this second shipment arrived at its destination in good condition and that it received full payment from its customers for the cargo. Nevertheless, Genetics refused to pay Cormorant the full amount of freight owed, withholding $87,454.68.

Genetics sued Cormorant and two other defendants in district court for the damage sustained by its cargo during the first shipment. Its complaint invoked the district court's jurisdiction over admiralty and maritime claims pursuant to Rule 9(h), Fed.R. Civ.P., and 28 U.S.C. § 1333(1). Cormorant answered and counterclaimed for unpaid freight on the second shipment. The district court dismissed one of the other defendants for lack of subject matter jurisdiction. Genetics then filed suit against all three defendants in state court.

After a hearing on May 23, 1988, the district court granted Cormorant's motion for summary judgment on its counterclaim. The court found that Cormorant had transported the second shipment of wheatseed to the Port of Damman and discharged the cargo there "in good order and condition." It further found that Genetics had made partial payment on the freight, but withheld $87,454.68 of the total amount owed Cormorant under the contract of carriage. Applying federal maritime law, the district court concluded that Genetics was required to make full payment of the freight owed regardless of the merits of any claims it had against Cormorant.

On June 17, 1988 the parties stipulated to dismiss the suit in district court without prejudice so that the case could be tried in state court, except that Cormorant's counterclaim was severed and Genetics preserved its right to appeal the district court's decision on this issue. Pursuant to the stipulation, the court dismissed Genet-

ics' suit and entered final judgment for Cormorant on its counterclaim for unpaid freight. Genetics now appeals the district court order granting Cormorant summary judgment on its counterclaim. We have jurisdiction over a final order of the district court, 28 U.S.C. § 1291, and we affirm the judgment.

Genetics does not challenge any of the factual findings of the district court, but asserts that it erred as a matter of law by granting summary judgment on Cormorant's counterclaim when its claim for damages was still pending. It contends that both California state law and federal maritime law permit setoff, and therefore the amount of its obligation to Cormorant for unpaid freight should be reduced by the amount of Cormorant's liability for damage to its cargo. Because Cormorant's liability for damage to the goods has not yet been litigated, Genetics argues that summary judgment on Cormorant's counterclaim is inappropriate.

Genetics contends that under California Code of Civil Procedure section 431.70 [1] its obligation to pay freight due to Cormorant is extinguished to the extent of the damage sustained by its cargo. Cormorant disagrees, asserting that the provisions of section 431.70 do not apply here and that the district court's grant of summary judgment was proper.

■ We need not resolve this dispute over the meaning and effect of section 431.-70, for Genetics' reliance on California law is wholly misplaced. The shipment of goods by sea is the sort of traditional maritime activity which falls squarely within the district court's admiralty jurisdiction.

1 *Benedict on Admiralty*, §§ 181, 182, p. 12–4. Cf. *Insurance Company v. Dunham*, 78 U.S. 1, 29, 20 L.Ed. 90 (1870) (The existence of maritime jurisdiction depends not on the place the contract was made, but on the subject matter of the contract.). Once admiralty jurisdiction is established, the substantive rules of maritime law apply, regardless whether the plaintiff chooses to pursue its claim in federal or state court. *Austin v. Unarco Industries, Inc.*, 705 F.2d 1, 6 n. 1 (1st Cir.), *cert denied*, 463 U.S. 1247, 104 S.Ct. 34, 77 L.Ed.2d 1454 (1983). Genetics first invoked federal maritime law by seeking relief in the district court. It cannot now assert that California law more properly governs.

Genetics also asserts that federal maritime law recognizes a setoff against freight for damage to cargo, relying on several early cases of dubious applicability. In *Willard v. Dorr*, 29 Fed.Cas. 1277 (C.C. D.Mass.1823) (No. 17,680) the master of a ship sued for his wages and the shipowner asserted a setoff for advances and partial payments already made to the master. In *Steamship Rutherglen Co. v. Howard Houlder & Partners, Inc.*, 203 F. 848 (2d Cir.1913) a shipowner sued for unpaid freight and the charterer countersued, claiming that the ship had not carried all of the cargo as provided in the contract. Because the vessel lacked the storage capacity guaranteed by the owners, the charterer was forced to ship part of its cargo on another ship. Setoff was allowed in these two cases; however, because of the very different factual settings, neither provides authority for Genetics' contention that it may offset the freight it owes to Cormorant by damage to the cargo.[2]

1. Section 431.70 provides that "[w]here cross-demands for money have existed between persons at any point in time when neither demand was barred by the statute of limitations, and an action is thereafter commenced by one such person, the other person may assert in the answer the defense of payment in that the two demands are compensated so far as they equal each other ..."

2. One of the cases cited by Genetics involves an analogous situation, but contradicts the argument it makes here. In *The Water Witch*, 66 U.S. (1 Black) 494, 17 L.Ed. 155 (1861), the

plaintiff sued for damage to its cargo and the shipowner counterclaimed for unpaid freight. Determining that the damage to the goods exceeded the freight, the trial court dismissed the shipowner's claim for freight and entered judgment for the plaintiffs for the difference in amount between the two claims. The court of appeals vacated the judgment for the plaintiff, stating that "the parties could not split up the claim for damages by applying a portion in extinguishing the freight money and then ask a decree for the excess of this sum," and instead, entered separate judgments for each party for the full amount of its claim.

More recent cases have established a clear rule in admiralty law: in the absence of a contractual term to the contrary, freight is due and payable upon delivery regardless of any claims the consignor or buyer might have for shortage or cargo damage on that shipment. *See, e.g., Metallgesellschaft A.G. v. M/V Capitan Constante*, 790 F.2d 280, 281 (2nd Cir.1986); *Greenstone Shipping Co., S.A. v. Transworld Oil, Ltd.*, 588 F.Supp. 574, 584 (D.Del.1984); *Puerto Rico Marine Management v. Ken Penn Amusement, Inc.*, 574 F.Supp. 563, 568 (W.D.Pa.1983); *Sun Refining and Marketing Co. v. Goldstein Oil Co.*, 620 F.Supp. 121, 125 (E.D. Mo.1985), *aff'd in part, reversed in part,* 801 F.2d 343 (8th Cir.1986).

Even if Genetics were correct that a shipper's claim for freight may be offset by any damage to the goods on that shipment, there is no authority suggesting that offset is appropriate where the damage was sustained in an entirely different transaction as in this case. Contrary to Genetics' contention, the unification of admiralty and civil rules in 1966 did not change this situation. While it is true that Rule 13, Fed.R. Civ.P., is now applicable in admiralty actions, it does no more than permit counterclaims between the parties which do not necessarily arise out of the same transaction or occurrence as the original claim. Nothing in Rule 13 requires a court to determine all of the claims before it simultaneously, or bars it from granting partial summary judgment on one or a few of them where appropriate under Rule 56.

In this case, the cross claims are factually unrelated and can be decided independently of one another. Determining whether Cormorant is liable for the damage to Genetics' cargo during the first shipment is irrelevant to Genetics' obligation to pay freight on the second shipment, since the two claims arise from separate transactions. There is no reason that judgment on Cormorant's claim for freight due should await resolution of Genetics' suit for damages and thus, the district court properly granted summary judgment.

The order of the district court is AFFIRMED.