## THE LAFCOMO.

District Court, S. D. New York.
Feb. 5, 1946.

George C. Sprague, of New York City, for libellant.

Tompkins, Boal & Tompkins, by Arthur M. Boal, all of New York City, for claimant.

Hunt, Hill & Betts, by John W. Crandall, all of New York City, for respondent.

BONDY, District Judge.

All the parties to this suit, the libellant which owned the lily of the valley pips shipped on the "Lafcomo," the claimant which owned, and the respondent which operated, the ship, filed exceptions to the report of the commissioner appointed to ascertain and compute the amount of damages sustained by the libellant through the negligent manner in which claimant and respondent stowed the pips on the open deck of the "Lafcomo" and through their negligent failure to cover such cargo with tarpaulins, contrary to the agreement between libellant and respondent, resulting in the total destruction of the shipment by sea water. Pioneer Import Corporation v. The Lafcomo, D.C., 49 F.Supp. 559, affirmed 138 F.2d 907, certiorari denied, Black Diamond Lines v. Pioneer Import Corporation, 321 U.S. 766, 64 S.Ct. 523, 88 L.Ed. 1063.

The libellant excepts to that part of the commissioner's report which states that it would appear from a reading of Clause 16 of the bill of lading that a choice of freight rates was offered to the libellant.

The clause provides: "In consideration of the rate of freight at which this shipment is accepted, the carrier's liability for loss of, or delay, or damage to the goods, shall never exceed: (1) when freight is paid or payable on an ad valorem basis, the value thereof declared in writing by the shipper previous to shipment and inserted herein; (2) in all other cases, the invoice value or $25. per cubic foot or $50. per 100 lbs. or $250. per package, whichever is least; and it is hereby agreed that the value of the goods does not exceed said amount. Unless it is stated in writing on this bill of lading that freight is paid or payable on an ad valorem basis, the carrier's liability, if any, shall be adjusted under clause (2) hereof. * * * Under no circumstances shall liability exceed the actual loss or damage sustained. * * *"

The clause is not ambiguous. It provides that liability shall be limited to the least of four specified amounts, which it is agreed the value does not exceed, unless the value is declared in writing, in which case liability is also limited to an amount not exceeding the declared value. It does not establish any basis for determining actual damages. See Ansaldo San Giorgio I v. Rheinstrom Co., 294 U.S. 494, 497, 55 S. Ct. 483, 79 L.Ed. 1016.

A common carrier can not limit its liability for negligence unless the shipper receives some consideration for such limitation, as for instance a choice of rates, that is, a lower rate when limiting its liability than when carrying with a less restricted limitation of liability. See Union Pacific R. Co. v. Burke, 255 U.S. 317, 41 S.Ct. 283, 65 L.Ed. 656.

The regular rate fixed by Tariff No. 7 of the Continental North Atlantic Westbound Freight Conference for the shipment of the pips was $10. per 40 cubic feet.

Under the title "Choice of Rates" the Tariff stated: "If the shippers elect to ship at a value in excess of Bill of Lading limit of value, they shall, in writing, declare the value before shipment and the rate applicable, unless already shown as ad valorem, will be the Tariff rate plus 2 per cent. of the value declared."

It is obvious that in the case of a shipment of a value greater than the limit specified in the bill of lading, a choice of rates was afforded. The shipper could declare the value of the shipment and pay the regular tariff rate plus two per cent. of the value declared, or without declaring any value, pay only the regular tariff rate, in which case the shipment became subject to the bill of lading specific limit of liability. However, applying the principle laid down in Kilthau v. International Mercantile Marine Co., 245 N.Y. 361, 157 N.E. 267, and The Merauke, 2 Cir., 31 F.2d 974, which this court considers itself bound to follow, in the case of a shipment of goods of a value not in excess of the limit of value there was only one rate, the regular tariff rate of $10 per 40 cubic feet, and not a choice of rates.

The libellant did not declare any value for its shipment and paid the regular tariff rate. It is not disputed that the invoice value of the shipment was the least of the amounts specified in the bill of lading and

that the value of the shipment did not exceed the bill of lading limit of value.

The libellant not having been offered any alternative rate for its shipment, the carrier's liability for its negligence has not been affected by any bill of lading limitation. Kilthau v. International Mercantile Marine Co., supra; The Merauke, supra. In these cases the value of the goods did not exceed the bill of lading limits of value and the limitations were held void for lack of choice of rates. It was so held notwithstanding that the shippers were permitted to declare a value in excess of the bill of lading limits of value upon payment of a higher rate and notwithstanding that the shipments had a greater value at destination than at the place of shipment. In the Kilthau case, it is stated that for goods of a value not in excess of the limited amount the shipper had in effect only one rate and that therefore "the agreement that liabilities shall not exceed the invoice value of the goods did not result in a reduction of charges to the shipper."

■ That the libellant thought that the liability of the carrier was limited to invoice value and at the trial on the merits requested a final decree based on invoice cost or value does not estop it now from urging the invalidity of the clause. The request was based not upon any admission of fact but upon an erroneous conclusion of law, not binding on any court or on the party by whom made. Pitcairn v. American Refrigerator Transit Co., 8 Cir., 101 F.2d 929, 935, certiorari denied 308 U. S. 566, 60 S.Ct. 78, 84 L.Ed. 475; Bierce v. Hutchins, 205 U.S. 340, 347, 27 S.Ct. 524, 51 L.Ed. 828.

Libellant also excepts to the commissioner's failure to report that the carrier's noncompliance with the agreement to cover the pips with tarpaulins violated the contract of shipment in its essence, thereby nullifying Clause 16, even if otherwise valid.

The District Court concluded that the agreement of the parties contemplated stowage of the cases on the forward deck properly covered by tarpaulins, that the shipper wanted the cases in a cool place and protected from sea water, that respondent and claimant with knowledge of the inherent nature of the cargo and of the damaging effect of salt water on plants and bulbs failed to exercise due care in stowing the cargo without tarpaulins in the wings of the hatch-

es where it was certain to be soaked by salt water and that under the circumstances it is reasonable to find that the damage would not have occurred but for such negligence. 49 F.Supp. 559, 560–563.

The Circuit Court, holding that there is ample evidence to sustain the trial court's findings, stated specifically that salt water is obviously harmful to plant life, that the finding of negligence in stowage is justified and that the shipper accepted the risk of losses from carriage on deck only so far as they occurred under proper stowage. The court remarked, moreover, that the statement of respondent's agents to claimant's captain that tarpaulins were not needed constituted a "gross misrepresentation of fact." 138 F.2d 907, 908.

■ Failing to cover the pips with tarpaulins constituted a change in the agreed manner of carriage, as was decided by the District Court, the findings of which were approved by the Circuit Court. Any departure by the carrier from the agreed method of transportation is a deviation releasing the shipper from all limitations upon the carrier's liability under the contract of carriage and entitles him to recover from the carrier full compensation for his loss due to breach of such contract. The Sarnia, 2 Cir., 278 F. 459, certiorari denied 258 U.S. 625, 42 S.Ct. 382, 66 L.Ed. 797; The St. Johns N. F., 2 Cir., 280 F. 553, affirmed 263 U.S. 119, 44 S.Ct. 30, 68 L.Ed. 201. As stated in The Sarnia, supra, 278 F. at page 466, there is not any sufficient reason why a "shipowner who performs his contract in a manner different from his undertaking may still claim the benefit of the stipulations respecting the value of the shipment, although he can not claim the benefit of a single other stipulation in his favor found in the bill of lading."

■ Under the facts found by the District Court the respondent and claimant were deprived of the benefit of the limitation clause contained in the bill of lading on the ground that they committed a fundamental breach of the contract of shipment by failing to cover the cargo with tarpaulins. The Sarnia, supra; The St. Johns N.F., supra.

■ The fact that the suit was brought to recover damages for negligence does not preclude the libellant from establishing that the provisions of the bill of lading were rendered inoperative by reason of a breach

532

of contract going to the essence thereof, constituting a deviation. See The Sarnia, supra.

Had the libellant known that the carrier would not stow the goods on the hatches and cover them with tarpaulins, it might have insured against loss from wetting of the pips instead of only against the loss of cargo overboard. See The St. Johns N.F., supra.

. The claimant and respondent except to the finding by the commissioner that the invoice value of the pips was $76,973.34. Since this court is of the opinion that Clause 16 is inoperative, the invoice value which was expressed in German marks does not constitute any limit of the liability of the carrier, and therefore it is not necessary to determine the equivalent of marks in dollars. In any case, the District Court determined that the invoice value of the pips was $76,973.34. The Circuit Court, discussing the propriety of the reference to the commissioner, stated: "All that was determined was the cost price of the pips abroad, which does not of itself establish the market value of unrefrigerated pips in New York."

Claimant and respondent urge that the commissioner erred in failing to find that libellant enjoyed a monopoly in the importation of German pips in 1939, by reason of which German pips did not have any market value in New York. The record discloses importations by others than libellant at that time of Danish pips which differed from the German variety only in that they were grown elsewhere. Pips were also being imported from Holland in 1939. There is not any basis for the contention that libellant had a monopoly. See The Waalhaven, D.C., 1 F.Supp. 396, affirmed 2 Cir., 64 F.2d 25, certiorari denied 289 U.S. 752, 53 S.Ct. 696, 77 L.Ed. 1497.

 The commissioner did not err in failing to deduct from the amount of damages the value of eight cases of pips broken up by the seas. The trial court found that the cargo was a total loss by reason of sea water damage and that none of the cases shifted or was lost overboard.

All the parties contend the commissioner erred in finding that $22.50 per thousand was the fair market value of refrigerated German pips at the port of New York on December 16, 1939, the date of arrival of the "Lafcomo," and in finding that unre-

frigerated pips were worth 20 per cent. less than refrigerated pips and that libellant was entitled to recover for the loss of 3,165,000 pips at $18 per thousand, amounting in the aggregate to $56,970, and interest thereon from December 16, 1939.

 The measure of damages to which libellant is entitled for destruction of its goods is the market value of such goods at destination in the condition in which they would have arrived but for the negligence of the carrier. New York, L. E. & W. R. Co. v. Estill, 147 U.S. 591, 617, 13 S.Ct. 444, 37 L.Ed 292. The law seeks merely to indemnify the shipper for his loss due to the carrier's negligence and the carrier should not be held liable if the goods would have deteriorated even if it had exerted proper care.

The District Court stated in its opinion that respondent and claimant argued that if the cases had been covered with tarpaulins the pips would have sprouted. Nevertheless the trial court expressly found that the contents of the cases were in good condition when they were received on board, that the lily of the valley pips were dormant when shipped and had not been refrigerated, except for 167 cases which were refrigerated for a few days only, that the pips would not have heated or sprouted if covered with tarpaulins on the voyage from Rotterdam to New York, and that they were in a dormant state (which naturally prevails between October and January) when examined on December 18, 1939, and there was at that time no indication of sprouting.

The claimant and respondent urged on appeal that the court committed error in making these findings. The Circuit Court stated that there is ample evidence to sustain the trial court's findings.

 Whether or not the pips would have been damaged by sprouting or heating or would have remained dormant if covered with tarpaulins was an issue that was tried and determined by the District Court and its determination will not be questioned by this court. The commissioner, having found that $22.50 per thousand, an amount offered for part of the shipment without differentiation as to grade, was the market value of refrigerated pips, erred in discounting that amount by 20 per cent. in reliance on the testimony of witnesses who based their opinions on a belief that the pips would have arrived not dormant and in a sprouted con-

dition. The testimony of the remaining witnesses who believed otherwise supports a finding that $22.50 per thousand would have been the value of unrefrigerated pips at the port of New York on December 16, 1939.

The libellant accordingly is entitled to a decree against the respondent for $71,212.-50 with interest from December 16, 1939, and against the claimant for $63,250. with interest from February 8, 1940, in accordance with the stipulation for value, the claimant to have a decree over against the respondent for any amount paid by it to the libellant in accordance with the holding of the District Court, affirmed on appeal.

It may be noted that the amount of damages would be the same if Clause 16 were held valid and the invoice value of the pips was $76,973.34 as found by the trial court and the commissioner, because in such case the actual damages would be less than the invoice value.

Libellant's exceptions numbered, first, second, third, fourth, fifth, seventh, eighth, ninth, tenth, eleventh, twelfth, thirteenth and fourteenth are sustained. Respondent's and claimant's exceptions numbered 10, 11, 12, 13, 14, 15, 16, 17, 18, 19, 20 and 21 are not involved in the decision herein. All other exceptions of libellant, respondent and claimant are overruled.