**P & E SHIPPING CORPORATION, Respondent and Claimant, Appellant,**

v.

**EMPRESA CUBANA EXPORTADORA E IMPORTADORA DE ALIMENTOS,\* Libelant, Appellee.**

No. 5846.

United States Court of Appeals First Circuit.

Aug. 19, 1964.

\* By substitution.

John G. Poles, with whom Poles, Tublin & Patestides, New York City, was on the brief, for appellant.

Victor Rabinowitz, New York City, with whom Antonio M. Bird and Hartzell, Fernandez & Novas, San Juan, P. R., were on the brief, for appellee.

Before WOODBURY, Chief Judge, and HARTIGAN and ALDRICH, Circuit Judges.

WOODBURY, Chief Judge.

On a previous appeal reported in Vol. 307 F.2d page 415 et seq. (C.A.1, 1962), this court found that the libelant-appellee, Banco Para el Comercio Exterior de Cuba,[1] was an agency or instrumentality of the government of Cuba and remanded the case to the United States District Court for the District of Puerto Rico to afford it an opportunity in further proceedings to ascertain from the United States Department of State whether the privilege of resort to the United States

1. It and its successor will be referred to hereinafter simply as the bank.

courts was available to the bank. On April 22, 1964, the court below entered an order based upon evidence introduced at a hearing, replies to its inquiries from the Department of State and the explicit language of the Court in Banco Nacional de Cuba v. Sabbatino, 376 U.S. 398, 84 S. Ct. 923, 11 L.Ed.2d 804 (1964), (decided March 23), ruling that the appellee bank was entitled to sue, and, there being no opposition, substituting another Cuban bank,[2] as the successor in interest of the original libelant. This court thereupon on May 7, 1964, recalled its mandate and, mandate having been returned, on May 14 entered an order vacating its judgment, cancelling its taxation of costs, substituting the new bank for the old one and assigning the case for reargument at its June, 1964, session in Boston.

The case has been reargued and we now reach the merits.

The facts are stated in some detail in our opinion on the previous appeal. For present purposes it will suffice to say that on September 22, 1960, the Liberian "tramp" (in the nautical sense), steamer *Ruth Ann* loaded beans at Port Huron, Michigan, and on October 18, 1960, loaded potatoes at Saint John, New Brunswick, freight prepaid on board as to both shipments, for carriage to Havana, Cuba, under clean ocean bills of lading in which the bank was named as consignee. The *Ruth Ann* sailed from Saint John almost at midnight on October 20, 1960, en route for Havana but did not proceed directly to that port. The vessel put in to New York on October 22 and left New York on the same day for Bermuda. On October 25 she sailed from Bermuda but instead of going to Havana went to San Juan, Puerto Rico, where she arrived on October 30 and started to unload cargo. On November 4 she and her owner, P & E Shipping Corporation, a Liberian corporation whose stockholders are United States citizens, were libeled *in rem* and *in personam* for failure to deliver the cargo of beans and potatoes according to the bills of lading. In the course of pro-

ceedings on the libel her cargo rotted and the bank removed it to abate a public nuisance. The district court after taking evidence concluded that the ship and her owner were required by the bills of lading to deliver the cargo in Havana and awarded the bank the cost of the shipment, freight and other expenses incurred by reason of the vessel's failure to deliver according to contract.

The court below rested its conclusion on findings based on evidence introduced at a hearing that both the officers of the libelee-owner and the master of the vessel knew of the unsettled political situation in Cuba and assumed the risks entailed thereby when they took the cargo on board and agreed to take it to Havana, that there was no sufficient reason for not discharging the cargo in Havana according to the terms of the bills of lading, and that even if there were good and sufficient reasons for not going to Havana it was grossly negligent to go to San Juan rather than to some port nearer to Havana.

The claimant-appellant makes the curious argument that there was no deviation at all because its action in sending the vessel to San Juan was within the scope of the provisions in the bills of lading permitting deviation from the voyage contracted for. The argument confuses no deviation with a permissible deviation. The latter is the question for decision.

The undertaking embodied in the bills of lading was to carry the cargo from Port Huron, Michigan, and Saint John, New Brunswick, to Havana, Cuba, and there unload it. In carrying out the undertaking the vessel did not take the ordinary, usual or customary route from Saint John to Havana. It went to New York, then out into the Atlantic to Bermuda and then back to San Juan, Puerto Rico. It took a zigzag course with perishable cargo on board and even then did not go to the port of discharge specified in the bills. This certainly was a deviation from the voyage contracted for.

2. Empresa Cubana Exportadora e Importadora de Alimentos.

The question is whether it was a deviation permitted by the bills of lading.

Provisions in the bills of lading permit deviation from the usual or ordinary route from port of loading to port of discharge for a variety of reasons, such as adjusting compasses or effecting repairs and under a variety of circumstances, such as likelihood of capture, seizure or detention. But condition 1 of the bills expressly incorporates therein the provisions of the Carriage of Goods by Sea Act, 49 Stat. 1207 (1936) and § 4(4) of that Act id. 1210, 46 U.S.C. § 1304(4) provides:

"Any deviation in saving or attempting to save life or property at sea, or any reasonable deviation shall not be deemed to be an infringement or breach of this chapter or of the contract of carriage, and the carrier shall not be liable for any loss or damage resulting therefrom: *provided, however*, That if the deviation is for the purpose of loading or unloading cargo or passengers it shall, prima facie, be regarded as unreasonable."

■■ Thus, even though the unsettled political situation in Cuba warranted deviation from the voyage contracted for, a matter we need not in our view of the case consider, the deviation can only be justified if "reasonable" and the burden of proving the reasonableness of the deviation rests upon the carrier when, as here, the purpose of the deviation is to unload cargo. Clearly, we think, the carrier has not sustained its statutory burden of proof.

The carrier claims that the political relations between the United States and Cuba deteriorated so much during the course of the voyage that it very reasonably feared the consequences to its vessel should it put in to Havana and, feeling that safety could be found only in a United States port, sent the *Ruth Ann* to San Juan. We are at a loss to understand, and no reason is given for preferring a United States port where the *Ruth Ann* could not discharge her perishable cargo of beans because of statutory restrictions on coastwise trade by foreign vessels.[3]

For all that the carrier has shown a foreign port was preferable as a place to unload the perishable cargo, and there are several nearer to Havana than San Juan such as Nassau in the Bahamas, Port-au-Prince, Haiti, Ciudad Trujillo (now Santo Domingo), Dominican Republic, and Kingston, Jamaica, in each of which the court below found, and the claimant-libelee introduced no evidence to the contrary, there were ample facilities for unloading and storing the cargo. In short, the carrier has utterly failed to sustain its statutory burden of proving the reasonableness of its deviation, if any deviation at all was warranted, and that is all that needs to be said to dispose of this appeal.

Judgment will be entered affirming the judgment of the District Court.

3. Even if there had been a legitimate reason for seeking a United States rather than a foreign port, there was no reason for going out into the Atlantic to Bermuda instead of taking a southerly route along the eastern coast of the United States where several ports are available.