Peter ROSENBRUCH,
Plaintiff-Appellant,

v.

AMERICAN EXPORT ISBRANDTSEN LINES, INC., Defendant-Appellee.

No. 127, Docket 75–7242.

United States Court of Appeals,
Second Circuit.

Argued Oct. 16, 1975.

Decided April 19, 1976.

Certiorari Denied Nov. 8, 1976.
See —— U.S. ——, 97 S.Ct. 353,
50 L.Ed.2d 308.

Seymour Simon, New York City (Graham & Simon, New York City, on the brief), for plaintiff-appellant.

M. E. DeOrchis, New York City (Brian D. Starer, and Haight, Gardner, Poor & Havens, New York City, on the brief), for defendant-appellee.

Before MANSFIELD, TIMBERS and GURFEIN, Circuit Judges.

TIMBERS, Circuit Judge:

Once again we have before us what Judge Tyler aptly described as "another variant of the package limitation issue" which has been before us in various contexts in recent years.[1] We are called upon again to construe the $500 per package limitation of liability clause in an ocean carrier's bill of lading as authorized by Section 4(5) of the Carriage of Goods by Sea Act (COGSA), 46 U.S.C. § 1304(5)(1970). The variant in the instant case stems from the fact that the lost cargo consisted of household goods owned by the shipper-consignee.

The issue arises this time on an appeal by the shipper from a judgment in his favor for cargo loss entered March 21, 1975 in the Southern District of New York, Harold R. Tyler, Jr., *District Judge*, 357 F.Supp. 982, to the extent that the judgment limited the shipper's recovery to $500 per package. The essential questions presented are (1) whether the district court correctly held that the container in which the household goods were shipped was a "package" within the meaning of the limitation of liability clause in the ocean carrier's bill of lading as authorized by COGSA; and (2) whether the district court correctly held that stowage of the container on deck rather than below deck was not such an "unreasonable deviation" from the contract of carriage as to deprive the carrier of the limitation of liability provided for in the bill of lading.

We agree with the district court's holdings on both questions. We affirm.

I.

The facts are not in dispute. The case was presented to Judge Tyler on cross-motions for summary judgment on the issue of limitation of liability.[2] We shall summarize briefly only those facts necessary to an

---

1. See, e.g., Judge Friendly's seminal opinion in *Leather's Best, Inc. v. S.S. Mormaclynx,* 451 F.2d 800 (2 Cir.1971); see also *DuPont de Nemours International S.A. v. S.S. Mormacvega,* 493 F.2d 97 (2 Cir.1974), and *Royal Typewriter Co. v. M/V Kulmerland,* 483 F.2d 645 (2 Cir. 1973)—to mention but a few cases involving this issue that have been before us.

2. Judge Tyler in his opinion and order of March 15, 1973, supplemented by his order of March 27, 1973, granted defendant's motion for summary judgment on the issue of limitation of liability. He denied plaintiff's cross-motion on the same issue.

Cutting through the procedural morass that ensued as a result of plaintiff's filing and then withdrawing notices of appeal from Judge Tyler's non-final orders of March 15 and 27, 1973, there eventually emerged on March 21, 1975 a final judgment entered upon the stipulation of the parties. The judgment is in favor of plaintiff in amount of $500 and specifically provides that it "is final in respect to both liability and damages." It is from this judgment that the instant appeal has been taken.

We have not been informed as to the reason for the two year delay between the initial orders entered in March 1973 and the final judgment entered in March 1975. We do note, however, that during this period our opinions were filed in *DuPont* and *Kulmerland, supra* note 1, both of which are referred to later in this opinion. Judge Tyler was the district judge in *Kulmerland.* 346 F.Supp. 1019 (S.D. N.Y.1972).

understanding of our rulings on the questions presented.

The shipper and consignee was plaintiff Peter Rosenbruch. The ocean carrier was defendant American Export Isbrandtsen Lines, Inc. (Export). The vessel involved was the S.S. Container Forwarder; it was owned and operated by Export and was designed for container carriage only. Plaintiff contracted with an international freight forwarder, Seven Santini Bros., Inc. (Santini), to handle the shipment of his household goods from Norwood, New Jersey, to Hamburg, Germany.

Santini, on behalf of plaintiff, handled all details of the shipment, including preparing the bill of lading,[3] other paper work, customs clearance and packing the goods for shipment. At the end of December 1970, Santini requested and obtained without charge from a division of Export a standard 40' x 8' x 8' container; took it at plaintiff's expense to the latter's home in New Jersey; loaded it with plaintiff's household goods; sealed it; and delivered it to Export at Pier 13 on Staten Island on January 8, 1971.

Before loading and sealing the container, Santini had booked passage for the container by Export aboard the S.S. Container Forwarder scheduled to depart on January 9, 1971 from New York for Hamburg via the North Atlantic crossing.

The vessel sailed from New York as scheduled on January 9. Heavy weather was encountered on the transatlantic crossing, during the course of which the container loaded with plaintiff's household goods, and 31 other containers, were lost at sea. All the containers were stowed on the weather deck, not under deck.

Plaintiff, invoking the admiralty and maritime jurisdiction of the district court, commenced this action on December 28, 1971. He sought to recover from Export the sum of $102,917.08[4] representing the value of his household goods which Export admits were lost at sea.

As the result of the cross-motions for summary judgment, Judge Tyler sustained Export's claim that its liability is limited to $500, for which there was entered the judgment in favor of plaintiff from which the instant appeal has been taken.

## II.

■ We turn directly to appellant's contention that the container in which his household goods were shipped was not a package within the meaning of the $500 limitation of liability clause of the bill of lading as authorized by COGSA.

Given the limitation of liability clause in the instant bill of lading[5] and the provision of COGSA which authorizes such

---

3. The bill of lading dated January 8, 1971 on Export's printed form was filled out by Santini. It stated that the shipper was "Santini Brothers Inc. For Peter Rosenbruck"; that the originating carrier to steamer was "Santini Brothers Inc."; that the consignee was "Peter Rosenbruck . . . Frankfurt, Main, Germany"; that the vessel was the "Forwarder"; that the port of loading was "Pier 13, Staten Island, N.Y."; that the port of discharge was "Hamburg". Then of particular importance to the issues in the instant case were the following entries in the bill of lading which were typed in by Santini:

   (1) In a column headed "No. Of Cont. Or Other Pkgs." there is the figure "1".

   (2) In another column headed "Description Of Goods" (which in turn is a sub-column under the heading "PARTICULARS FURNISHED BY SHIPPER") there appears "40' CMLU # 183333 Cont. Booking # 8 used household goods."

There are two other items of significance, one of which appears on the bill of lading and the other stricken out:

(1) "SHIPPERS LOAD AND COUNT" was stamped on by Export in large block letters before the bill of lading was returned to Santini.

(2) "Stow under deck only" was typed in by Santini but, as the district court noted, was "entirely blacked out and completely illegible" in the original bill of lading returned by Export to Santini.

4. The parties have stipulated that, if the district court's $500 limitation of liability determination should be reversed, plaintiff is to recover $35,000.

5. Section 17 of the bill of lading provides in relevant part:

   "In case of any loss or damage to or in connection with goods exceeding in actual value the equivalent of $500 lawful money of the United States, per package, or, in case of

limitation,[6] the critical facts determinative of this issue are those with respect to the selection and packing of the container, together with the provisions of the bill of lading which relate to the package issue.

Here the shipper's agent alone loaded the container which he obtained from the carrier, rather than constructing separate wooden crates or containers. The metal container was loaded with the shipper's goods only, not those of any other shipper. The contents of the container were not separately packed or labeled. The shipper's agent selected the voyage and the vessel for the shipment. He stated on the bill of lading that one package or container was involved and described the contents as "used household goods." The carrier was not involved at all in packing the container.

While the facts of these package cases vary widely, we think that this is about as clear a one as we have seen for holding that the container constituted a package for the purposes of Section 4(5) of COGSA. Indeed, it comes very close to the hypothetical case envisioned by Judge Friendly in *Leather's Best, supra* note 1, at 815, where the shipper would load the container on his own premises and the bill of lading would disclose nothing with respect to the number of units within the container.

In any event, unless and until Congress resolves the limitation of liability problems created by the new container age, we think that the "functional economics test"—also referred to as the "functional package unit test"— enunciated in *Kulmerland, supra* note 1, at 648–49, while not solving the problem entirely, offers as good a judicial interpretation of the word "package" in Section 4(5) as we have seen. Under that test the shipment in a container of several items that are separately suitable for shipment would entitle the shipper on declaring them to extend the $500 limitation to each of the separate packages. And it must be remembered that the shipper, by using the container, is getting a 10% reduction in the freight rate, thus avoiding the cost of independent packaging that might otherwise be incurred. This should enable him to obtain additional insurance if necessary.

Moreover in the instant case the application of the *Kulmerland* rule strikes us as particularly appropriate since appellant's household goods, absent a container, would not have been shipped in separate packages. They would have been shipped in a large wooden crate or container approximating the size of the metal container that was actually used.

goods not shipped in packages, per shipping unit, the value of the goods shall be deemed to be $500 per package or per shipping unit. The Carrier's liability if any, shall be determined on the basis of a value of $500 per package or per shipping unit or pro rata in case of partial loss or damage, unless the nature of the goods and a valuation higher than $500 per package or shipping unit shall have been declared in writing by the Shipper upon delivery to the Carrier and inserted in this bill of lading and extra charge paid . . . ."
This is substantially the same limitation of liability clause which we have construed many times before. E.g., *DuPont, supra* note 1, at 100 n. 8; *Leather's Best, supra* note 1, at 805–06.

6. Section 4(5) of COGSA, 46 U.S.C. § 1304(5)(1970), provides in relevant part:
"Neither the carrier nor the ship shall in any event be or become liable for any loss or damage to or in connection with the transportation of goods in an amount exceeding

$500 per package lawful money of the United States, or in case of goods not shipped in packages, per customary freight unit, or the equivalent of that sum in other currency, unless the nature and value of such goods have been declared by the shipper before shipment and inserted in the bill of lading

. . . .

By agreement between the carrier, master, or agent of the carrier, and the shipper another maximum amount than that mentioned in this paragraph may be fixed: *Provided,* That such maximum shall not be less than the figure above named. . . ."
The legislative purpose behind this statute, as applied to container shipping which developed *after its enactment in 1936, has been discussed* in our prior opinions. See *Kulmerland, supra* note 1, at 648–49; *Leather's Best, supra* note 1, at 814–17; *Standard Electrica, S. A. v. Hamburg Sudamerikanische Dampfschifffahrts-Gesellschaft,* 375 F.2d 943, 945 (2 Cir.), *cert. denied,* 389 U.S. 831 (1967).

We hold that the district court correctly concluded that the container in which appellant's household goods were shipped was a package within the meaning of the $500 limitation of liability clause of the bill of lading as authorized by Section 4(5) of COGSA.

### III.

Appellant also contends that the stowage of the container on the weather deck rather than below deck was such an unreasonable deviation from the contract of carriage as to deprive the carrier of the limitation of liability provided for in the bill of lading. In short, he claims that such stowage was not a "reasonable deviation" within the meaning of Section 4(4) of COGSA, 46 U.S.C. § 1304(4)(1970). We disagree.

The short answer to this claim is twofold. First, the district court specifically found that, although Santini had inserted in the bill of lading the provision "Stow under deck only", the carrier deleted this provision from the original bill of lading before returning it to the shipper. It therefore was not part of the contract of carriage. We hold that the district court's determination was correct, whether as a matter of law or as a finding of fact which was not clearly erroneous. *DuPont, supra* note 1, at 102.

Second, the district court also correctly held that an "under deck" stowage provision in the bill of lading was prohibited by the applicable Tariff Rules and Regulations of the North Atlantic Continental Conference.[7] The carrier was a member of the Conference. The Tariff applied to the Container Forwarder as a vessel operating within the jurisdiction of the Conference and was incorporated by reference in the bill of lading. Under these circumstances, it was not a deviation to have stowed the container on the weather deck.

7. Trailer/Container Traffic General Rule No. 13(c) of the Conference's Tariff Rules and Regulations provides:

"Since it is necessary that Containers be stowed on or under deck at the Member

We hold that the district court correctly rejected appellant's deviation claim.

Affirmed.

Lines' option, Bill of Lading specifically claused provides under deck stowage will NOT be issued."