[Civ. No. 41298. First Dist., Div. Two. Oct. 10, 1978.]

VARIAN ASSOCIATES, Plaintiff and Respondent, v.
COMPAGNIE GENERALE TRANSATLANTIQUE,
Defendant and Appellant.

**COUNSEL**

Graham & James, Francis L. Tetreault and A. M. Young for Defendant and Appellant.

Kenneth F. Lovette for Plaintiff and Respondent.

## OPINION

KANE, J.—Defendant, Compagnie Generale Transatlantique, a corporation, dba French Line (hereafter appellant or French Line) appeals from the trial court's judgment awarding damages in the sum of $35,422.04 together with costs in favor of plaintiff, Varian Associates (hereafter respondent or Varian).

The stipulated facts reveal that on or about January 18, 1971, Varian contracted with French Line to ship a spectometer system[1] packed in six separate boxes from Oakland, California, to Hamburg, West Germany, aboard appellant's vessel, MS *Michigan.* The vessel made several scheduled stops between Oakland and Hamburg. In the course of the voyage, the cargo was shifted by the stevedores at various ports of call in connection with the discharge and loading of freight aboard the vessel. During the restowing of the cargo at Antwerp, the box containing an electro-magnet, a crucial part of the spectometer system, was damaged. As a result, the electro-magnet was rendered valueless, causing a total loss of $35,422.04.

The stipulated facts further disclose that the electro-magnet, which weighed 8,500 pounds, was carefully packaged, and that its weight and dimensions were stenciled on the outside of the box, together with a warning that the box contained a delicate instrument to be handled with care.

Finally, the stipulated facts indicate that in accordance with the prevailing federal statute (Carriage of Goods by Sea Act, 46 U.S.C. § 1300 et seq. (COGSA)),[2] the bill of lading issued by French Line limited the carrier's liability for loss or damage to $500 per package unless a higher amount had been declared by the shipper; and that Varian had failed to declare any specific value with respect to the shipment at issue.

The action at bench was brought by Varian, as subrogor of American Home Assurance Company, the real party in interest, in order to recoup $35,422.04, the insurance proceeds paid by the insurer to Varian by virtue of an insurance policy between them. The complaint alleged three causes

---

[1] A spectometer system is a highly sophisticated instrument used in the investigation of the magnetic properties of atomic nuclei in chemical and physico-chemical research.

[2] Unless otherwise indicated, all references will be made to COGSA.

of action for recovery: (1) breach of contract of carriage; (2) unreasonable deviation; and (3) gross negligence (sometimes couched in terms of reckless misconduct). The trial court, sitting without a jury, handed down a memorandum decision, which stated inter alia that "the shifting of the container causing the damage, constituted active and gross negligence by the defendant, further that the gross negligence of the carrier, materially increased the risk of transport and displaced the contract of carriage. The Court further finds that because of the gross negligence of the defendant a deviation occurred." In accordance therewith, judgment was entered in favor of respondent, compensating it for the full amount of loss suffered by reason of the destruction of the electro-magnet.

■■■ French Line does not disclaim liability for the loss. Its sole contention is that its responsibility should be limited to $500 per package, pursuant to both the bill of lading and COGSA. Hence, the principal issue on appeal is whether we should give effect to the express limitation contained in the contract of carriage and in the statute or whether, following the trial court's reasoning, we should confirm the award of full compensation.

In determining this crucial issue, we first examine the bill of lading which serves as a contract of carriage defining the rights and duties of the contracting parties. In so proceeding, we are impressed that pertinent provisions of the contract state in the clearest possible terms that in case of loss or damage *"from whatever cause and of whatever nature"* (italics added) the liability of the carrier shall not exceed $500 per package unless a higher value has been declared by the shipper.[3] A review of the

---

[3]The pertinent portions of the bill of lading read as follows: "VIII—LIMITATION OF LIABILITY.—A) The Carrier and the Captain will not be responsible for losses, averages, damages or delays resulting from any of the following causes: . . .

"B) 1—With reference to the carriage provided for in this bill of lading, the Carrier has offered to the shipper the choice between two rates of freight, the lower applicable if the shipment is subject to the limitation of the amount of liability provided for in the present paragraph, and the higher if the limitation of amount of liability is greater, in accordance with the declaration made by the shipper. Consequently, the following has been mutually agreed: Unless a higher amount has been declared in writing by the shipper to serve as the basis of the freight and has been stated on the present bill of lading, the value of the goods does not exceed $500 per package or the invoice value (as hereinafter defined), whichever is less, this limitation of amount of liability having been requested by the shipper so as to pay only the lower rate of freight calculated in consideration of the aforesaid limitation. *In case of loss or damage* or any irregularity whatsoever for which the Carrier and/or the Captain may be liable, *from whatever cause and of whatever nature*

pertinent provisions of COGSA lends support to a similar conclusion. Section 1304, the liability section of the statute, refers to three main instances where the carrier is liable for the loss or damage to the cargo. These three instances are: (1) unseaworthiness of the vessel if caused by want of due diligence; (2) negligence; and (3) unreasonable deviation (§ 1304(1), (3) and (4)). After defining the causes giving rise to liability, the statute explicitly provides that *in any event* the liability of the carrier or the ship shall not exceed $500 per package or customary freight unit unless the nature and value of the goods have been declared by the shipper before shipment and inserted in the bill of lading (§ 1304(5)).[4] Since in the instant case the facts conclusively establish that Varian failed to specify the value of the damaged package and failed to include any higher value in the bill of lading, the liability of the carrier must, as a matter of law, be limited to the contractual and statutory sum of $500.

Respondent nonetheless insists that the facts here present justify full compensation for the damaged cargo. Respondent's primary contention is that the restowage of the cargo in Antwerp constituted gross negligence which should be classified as an unreasonable deviation which, under the recognized principles of maritime law, abrogates or displaces the contract of carriage, renders the package limitation null and void, and entitles the shipper to recover from the carrier the full amount of loss resulting from the breach (*S.S. Willdomino* v. *Citro Chem. Co.* (1927) 272 U.S. 718 [71 L.Ed. 491, 47 S.Ct. 261]; *The Indrapura* (D.Ore. 1909) 171 Fed. 929; *The Sarnia* (2d Cir. 1921) 278 Fed. 459; *The Lafcomo* (S.D.N.Y. 1946) 64 F.Supp. 529). Respondent's argument is untenable for two main considerations: (1) the restowage of the cargo under the circumstances of the

---

(*including negligence* and unseaworthiness) and in whatever place and time the loss, damage or irregularity may have occurred, *the liability of the Carrier* and/or Captain *shall never exceed $500 per package,* or the invoice value, whichever is less, *unless a higher value has been declared* as stated above, in which latter case the value so declared by the shipper shall be the limit of the Carrier's and/or Captain's liability. In all cases of partial loss or shortage for which the Carrier and/or the Captain are liable and in the same circumstances and conditions as hereabove, the indemnity will be calculated at a pro rata of the sum which will be due in case of total loss of the goods according to the various preceding stipulations." (Italics added.)

[4]Section 1304(5), provides in part that "*Neither the carrier nor the ship shall in any event be or become liable for any loss or damage to or in connection with the transportation of goods in an amount exceeding $500 per package* lawful money of the United States, or in case of goods not shipped in packages, per customary freight unit, or the equivalent of that sum in other currency, *unless the nature and value of such goods have been declared by the shipper before shipment and inserted in the bill of lading.* This declaration, if embodied in the bill of lading, shall be prima facie evidence, but shall not be conclusive on the carrier." (Italics added.)

instant case fails to constitute an actionable deviation within the meaning of the law; (2) the finding of gross negligence is not supported by the stipulated facts.

By introduction, we note that as applied in admiralty law the term *"deviation"* was originally employed to express the wandering or straying of a vessel from the customary course of the voyage, a *geographical departure* from a planned or normal shipping route (*S.S. Willdomino* v. *Citro Chem. Co., supra,* 272 U.S. 718; *P & E Shipping Corp.* v. *Empresa Cubana Export. E Import* (1st Cir. 1964) 335 F.2d 678; *United Nations Children's Fund* v. *S/S Nordstern* (S.D.N.Y. 1966) 251 F.Supp. 833). ■ In the course of time, however, deviation has gained a broader meaning and has been interpreted to mean any variation in the conduct of a ship in the carriage of goods whereby the risk incident to the shipment will be increased, such as *carrying the cargo on the deck* of the ship contrary to custom and without the consent of the shipper, *delay* in carrying the goods, *failure to deliver* the goods at the port named in the bill of lading and *carrying them farther* to another port, or bringing them back to the port of original shipment and reshipping them (*G. W. Sheldon & Co.* v. *Hamburg Amer. P.-A.-G.* (3d Cir. 1928) 28 F.2d 249, 251; *Francosteel Corp.* v. *N.V. Nederlandsch Amerikaansche* (1967) 249 Cal.App.2d 880, 884-885 [57 Cal.Rptr. 867]). The underlying rationale of making a deviation an actionable wrong with the effect of depriving the carrier of the benefit of the contractual limitation of liability is well stated in *Jones* v. *The Flying Clipper* (S.D.N.Y. 1953) 116 F.Supp. 386, where the court emphasized that "an unjustifiable deviation changes the character of the voyage so essentially as to amount to an entirely different venture from that contemplated by the parties." (P. 387.)

In line with these principles, the restowing of cargo has been held an unjustifiable deviation only when, *in violation of the contractual agreement or custom, the carrier stowed cargo on deck instead of* the agreed upon method of placing and carrying it *under deck* and thereby exposed the goods to a serious and uncontemplated risk (*St. Johns Corp.* v. *Companhia Geral, etc.* (1923) 263 U.S. 119 [68 L.Ed. 201, 44 S.Ct. 30]; *Rosenbruch* v. *American Export Isbrandtsen Lines, Inc.* (2d Cir. 1976) 543 F.2d 967; *Encyclopaedia Britannica, Inc.* v. *SS Hong Kong Producer* (2d Cir. 1969) 422 F.2d 7; *Searoad Shipping Co.* v. *E. I. duPont de Nemours and Company* (5th Cir. 1966) 361 F.2d 833; *The Sarnia, supra,* 278 Fed. 459; *Jones* v. *The Flying Clipper, supra,* 116 F.Supp. 386), *or if in violation of contract of carriage the carrier deviated from the agreed method of*

*transportation (Pioneer Import Corporation* v. *The Lafcomo* (2d Cir. 1947) 159 F.2d 654).

It is plain that none of the above conditions exist in the case at bench. The record is undisputed that the shipment in question remained on the original deck during the entire voyage, and the damage occurred in the course of the restowing of the cargo on that deck. In addition, respondent failed to show that the contract of carriage contained provisions prohibiting the restowing of the freight at several ports of call and/or that such practice was proscribed pursuant to recognized trade custom. Finally, it bears emphasis that while there was a warning on the outside of the box, respondent does not contend that the manner of handling of the shipment was made a part of the contract or that the carrier deviated from the agreed upon method of handling and transporting the cargo.

 Since it clearly appears that appellant deviated neither from the explicit provisions of the contract of carriage nor from the recognized and accepted maritime practice, its handling of the cargo may be classified merely as a deviation from, or a noncompliance with, the standard duty of care. This conduct, however, amounts to no more than simple negligence. It is, of course, axiomatic that mere negligence with regard to stowage or handling of cargo may not be held to be a deviation within the meaning of the maritime law (*Jones* v. *The Flying Clipper, supra,* 116 F.Supp. at p. 389; *The Chester Valley* (5th Cir. 1940) 110 F.2d 592, 594).

Respondent's novel claim that the conduct of French Line constituted gross negligence and that this type of aggravated carelessness must *ipso jure* qualify as an unreasonable deviation thereby reestablishing full accountability of the carrier, must be rejected both by reason of legal policy and existing case law as well.

As amplified by both the cases and legal authorities, the main purpose of enacting COGSA was to balance the liability between the shipper and carrier for the loss or damage to cargo. Under the statutory scheme the shipper is protected at least up to $500 per package, which designates the mandatory minimum of the carrier's liability. At the same time the shipper, at his option, can obtain full coverage simply by declaring the nature and value of the goods on the bill of lading, and, if necessary, paying the higher tariff. But the same statutory strictures clearly serve the carrier as well by alleviating his risk for the loss and damage of the cargo by putting the burden of higher insurance on the shipper, if the latter

truly intends to secure a higher amount for the lost or damaged shipment (§ 1304; *Standard Electrica, S.A.* v. *Hamburg Sudamerikanische, etc.* (2d Cir. 1967) 375 F.2d 943, 945-946; *Caterpillar Americas Company* v. *S.S. Sea Roads* (S.D.Fla. 1964) 231 F.Supp. 647, 650; Gilmore & Black, The Law of Admiralty (2d ed. 1975) pp. 139-140).

In light of the clearly worded language of the statute, and the aforestated policy considerations portending to set a reasonable limit to the liability of the carrier, we must concur with those cases which hold that even in the event of an unreasonable deviation, section 1304(5), places an invariable $500 per package limitation upon the financial responsibility of the carrier *in the absence of a declaration of a higher value by the shipper* (*Atlantic Mutual Insurance Co.* v. *Poseidon Schiffahrt* (7th Cir. 1963) 313 F.2d 872; *Caterpillar Americas Company* v. *S.S. Sea Roads, supra,* 231 F.Supp. 647; *Nassau Glass Company* v. *Noel Roberts, Ltd.* (S.D.Fla. 1965) 249 F.Supp. 116). For the same reason we are indisposed to overturn the delicate balance carefully drawn by the enactment of COGSA and to establish by judicial fiat a new instance of unlimited liability of the carrier by extending the court-created doctrine of "quasi-deviation" to an entirely new area of gross negligence.

In reaching this conclusion, we are aided not only by logic and common sense, but also by the existing case law dealing with the subject matter. A case in point is *Iligan Integ. Steel Mills, Inc.* v. *SS John Weyerhaeuser* (2d Cir. 1974) 507 F.2d 68. In *Iligan,* the cargo (188 pieces of valuable machinery and parts for a steel mill) was destroyed due to the unseaworthiness of the ship. The shipper brought an action against the carrier for full indemnity, claiming that the carrier's conduct comprised such gross negligence and wanton misconduct as to constitute an unreasonable deviation from the contract of carriage, and that such deviation should vitiate the contract and deprive the carrier of the protection afforded by section 1304. In rejecting the shipper's contention and upholding the $500 per package limitation, the reviewing court emphasized that with regard to the stowage of the cargo quasi-deviation was recognized only in one instance, i.e., deck stowage of the cargo when the carrier had agreed to carry the goods below deck. In refusing the extension of quasi-deviation to gross negligence or wanton misconduct, the court pointed out that the definition and application of varying degrees of negligence and willful and wanton misconduct is extremely difficult, and even more importantly that the extension requested by the

plaintiff would introduce into the maritime law an enormous potential of liability for the carrier in an apparent circumvention of COGSA.

Although the foregoing discussion is determinative of appellant's claim, we note that the judgment of the trial court must be held infirm on the additional ground that the finding of gross negligence is not supported by the stipulated facts and/or other portions of the record. These facts reveal merely that the electro-magnet was properly packaged; that on the outside part of the box were the words, "Delicate Instrument," "Handle With Care," "Temperature Control," "Will Freeze Below Zero"; that after the shipment was accepted by French Line, the cargo was shifted by the stevedores at the various ports of call in connection with discharging and picking up additional cargo; and that the damage probably occurred while the box containing the electro-magnet was shifted by the stevedores at Antwerp. These facts add up to no more than that the stevedores in charge of loading and unloading the vessel failed to handle the cargo with due care, which is nothing but simple, ordinary negligence. In the words used by the court in *Jones* v. *The Flying Clipper, supra,* 116 F.Supp. at page 389, respondent here "*attempts to equate unjustifiable deviation with ordinary breaches of obligations* under the Act [COGSA], *such as lack of due diligence to* make the vessel seaworthy, or *properly and carefully to handle, stow, care for,* or deliver her *cargo* and the like." (Italics added.)

In view of the result reached above, respondent's additional contentions do not require extended discussion. A potential reliance on subdivision (4) of section 1304, which provides in part that "if the deviation is for the purpose of loading or unloading cargo or passengers it shall, prima facie, be regarded as unreasonable" is of no avail to respondent for two reasons. One, we have concluded that appellant has not deviated from the provisions of the contract, but was guilty of mere negligence in handling the cargo which is covered by subdivision (3) of the section. Two, the "deviation" mentioned in subdivision (4) denotes a geographical deviation, that is a departure of the vessel from its normal route, rather than a "quasi-deviation" claimed by respondent here. ·

Nor do we find any merit to respondent's contention that the limitation of liability in question is proscribed by California Civil Code, section 2175.[5] First of all, it is clear that the dispute at bench is governed by

---

[5]Civil Code, section 2175, provides that "*A common carrier cannot be exonerated, by any agreement* made in anticipation thereof, *from liability for the gross negligence,* fraud, *or willful wrong* of himself or his servants." (Italics added.)

COGSA. It is again axiomatic that where, as here, a federal statute governs the rights of the parties, the state statute or the canons of common law are superseded by the federal enactment under the doctrine of preemption (cf. *Crispin Company* v. *Lykes Bros. Steamship Co.* (S.D.Tex. 1955) 134 F.Supp. 704, 706). Moreover, it is obvious that the carrier here did not immunize itself from responsibility for its negligence, but only *limited* the amount of its financial responsibility. This kind of limitation does not contravene the basic precept that the tortfeasor may not excuse himself by a prior agreement from the consequence of his own negligent or other wrongful act (*Tessler Brothers (B.C.) Ltd.* v. *Italpacific Line* (9th Cir. 1974) 494 F.2d 438, 443).

Finally, we observe that the cases relied upon by respondent (e.g., *The Indrapura, supra,* 171 Fed. 929; *The Sarnia, supra,* 278 Fed. 459; *Jones* v. *The Flying Clipper, supra,* 116 F.Supp. 386; *The Lafcomo, supra,* 64 F.Supp. 529, etc.) are clearly distinguishable from the case at bench. To start with, none of those cases dealt with the special issue here raised, i.e., whether gross negligence in restowing cargo constitutes an unreasonable deviation. Moreover, as spelled out in detail *ante,* all of the above-cited cases involved positive and gross violations of the explicit provisions of the contract of carriage, not mere mishandling of cargo in breach of the standard duty of care.

The judgment is reversed with directions to the trial court to enter judgment for respondent in the amount of $500 with interest at 7 percent thereon from March 1, 1971. Appellant shall recover costs on appeal.

Taylor, P. J., and Rouse, J., concurred.

Respondent's petition for a hearing by the Supreme Court was denied December 6, 1978.